In re Donald Earl HARRIS and
Lois Jean Harris, Debtors.

In re Mark Thomas TUTINO
and Michelle Meraid
Tutino, Debtors.

In re Nicole Susann CLARK, Debtor.

In re Patrick CONWAY, Debtor.

In re Nancy Ann LUTZ, Debtor.

In re Sherry Ann MOXINCHALK,
Debtor.

In re Robert Emerson SWINK and
Deborah Marie Swink, Debtors.

In re Marie Alaina GARLITS, Debtor.

UNITED STATES TRUSTEE, Plaintiff,

v.

Robert KASUBA, d/b/a Affordable
Legal Assistance, Defendant.
(Eight Cases)

Bankruptcy    Nos. 92–24875–BM,    92–
25317–BM, 92–25037–BM, 92–25149–BM,
92–24876–BM, 92–25075–BM, 92–24964–
BM, 92–25030–BM.
Adv. Nos. 93–2060–BM through
93–2067–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

March 5, 1993.

Joseph M. Fornari, Office of U.S. Trustee, Pittsburgh, PA, for plaintiff.

Robert W. Kasuba, pro se.

### *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

The United States Trustee alleges in the above-captioned eight (8) adversary actions that defendant Robert Kasuba ("Kasuba"), doing business as Affordable Legal Assistance, is not an attorney at law and has unlawfully practiced law by preparing petitions and accompanying schedules and statements filed in the above bankruptcy cases. The United States Trustee seeks an injunction prohibiting defendant from engaging in such activity in the future in this court.

Kasuba admits that he is not an attorney at law but denies that he is practicing law. According to him, his business is a typing

service which merely enters information provided by his clients onto bankruptcy petitions and attached documents.

The relief sought by the United States Trustee will be granted. An injunction against Kasuba shall be issued. Defendant Robert Kasuba will be enjoined from the illegal practice of law and will be ordered to cease and desist from said illegal activities.

–I–

**FACTS**

Kasuba is not a member of any bar and is not authorized to practice law in any jurisdiction. On November 18, 1991, defendant was certified as a legal technician by the National Society of Legal Assistance Professionals.

He does business as Affordable Legal Assistance. Virtually all of his business is derived from the preparation of voluntary chapter 7 bankruptcy petitions and related documents for individual consumer debtors.

Customers are actively solicited through the distribution of business cards and advertisements in the classified sections of local newspapers of general circulations. The business card reads as follows:

A**ffordable**
Legal Assistance

Robert Kasuba

2749 Noblestown Rd.
Pittsburgh, PA. 15205          412/921-2891

Newspaper advertisements are placed in the classified section entitled "Legal Services", as opposed to the sections advertising stenographic and/or typing services. A sample ad reads as follows:

BANKRUPTCIES CHAPTER 7
$125.
DIVORCES $ 50. + COSTS
Affordable Legal Assistance
24 HOURS          921–2891

The ads preceding and following defendant's ads are subscribed to by individuals known to the court and/or identified in the ad as attorneys or members of the Pennsylvania and/or federal bar.

Individuals wishing to file for bankruptcy are interviewed by Kasuba at his place of business. Defendant avers that the following sign is post on the wall:

°THERE ARE NO LAWYERS
AFFILIATED WITH
THIS OFFICE°

°THIS OFFICE DOES NOT GIVE
LEGAL ADVICE°

°FEES ARE FOR DOCUMENT
PREPARATION ONLY°

No corroboration is offered as to this posting and no detail is submitted as to the number of signs hung, nor of their prominence or positioning. Defendant's Exhibit B indicated no tape marks or nail holes so as to evidence its posting. To the contrary, this particular sign appeared fresh and new.

Defendant testified that individuals for whom he prepares chapter 7 petitions are required to execute a document, the second paragraph of which reads as follows:

2. **DESCRIPTION OF SERVICES.** A.L.A. [Affordable Legal Assistance] will provide typing and arrangement of all forms and documents so that they are suitable and meet all requirements for Federal and State regulations. A.L.A. does not act as an attorney nor does A.L.A. provide any legal advise (sic) concerning any legal matters.

After Kasuba has interviewed a client, he prepares the petition, attached schedules and statements. Specifically, he determines whether they have an interest in real property, the nature of that interest, its current market value, the amount of any secured claim against the property, and

then enters this information on Schedule A, Real Property.

He determines whether they have an interest in any personal property, its current market value, and then enters this information on Schedule B, Personal Property.

Kasuba determines whether any of their property may be claimed as exempt, identifies the Code section providing a basis for the exemption, specifies the amount of the claimed exemption, and then enters the information on Schedule C, Property Claimed As Exempt.

He determines whether his client has creditors holding secured or unsecured claims, the date on which the claim was incurred, the amount of the claim, and then enters the information on Schedules D, E, and/or F.

Kasuba determines whether his client is party to any executory contracts or unexpired leases. If Kasuba determines that they are, he then enters on Schedule G, Executory Contracts and Unexpired Leases, the name and address of the other party, describes the contract or lease, identifies the debtor's interest therein, and (if it is a lease) whether it is for nonresidential real property.

He determines whether his client has any co-debtors. If they do, he enters the name and address of the co-debtor and of the creditor on Schedule H, Codebtors.

Defendant also prepares Schedule I, Current Income Of Individual Debtor(s), and Schedule J, Current Expenditures Of Individual Debtor(s).

In addition to preparing the above schedules, Kasuba also prepares a document entitled "Declaration Concerning Debtor's Schedules", in which the debtor declares under penalty of perjury that the schedules and summaries are true and correct to the best of their information and belief. Kasuba explains to his clients the significance of the declaration and advises them that they could be charged with a crime and prosecuted if they know the information to be false.

Kasuba also prepares a document entitled "Statement Of Financial Affairs" on which debtor answers certain questions under penalty of perjury. Among the questions answered are: whether any transfers were made within one year prior to commencement of the case "to or for the benefit of creditors who are insiders"; whether any property, "other than in the ordinary course of business or affairs of the debtor" had been "transferred either absolutely or as security" within one year before commencement of the case; and whether any creditor made a "setoff" against a deposit of the debtor within ninety days of commencement of the case.

Defendant informs clients that they may: surrender property securing a consumer debt; reaffirm a debt pursuant to 11 U.S.C. section 524(c); redeem property pursuant to 11 U.S.C. section 722 which they have claimed as exempt; and avoid a lien pursuant to 11 U.S.C. section 522(f) against property which they have claimed as exempt. If the client desires to do any of these, Kasuba prepares a document entitled "CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION".

He informs clients that a debtor who is unable to pay the entire filing fee when they file their petition may petition the court for leave to pay the fee in installments. If the client desires to do so, Kasuba prepares the appropriate application.

Kasuba also explains to clients the significance of the automatic stay and provides them with a pre-printed form letter which informs creditors of the bankruptcy filing and the automatic stay. Clients are told that they may, if they choose, send the letter to creditors who continue to demand payment or who threaten to take legal action.

After Kasuba has prepared the above documents, he mails them to the client with the instruction to sign them where indicated. The client then files the petition *pro se* with the clerk of this court.

Kasuba charges the client $135.00 for the services he provides.

The above-captioned voluntary *pro se* chapter 7 petitions were prepared by Kasu-

ba and were filed between November 12, 1992 and December 8, 1992.

Kasuba began doing business as Affordable Legal Assistance in November of 1991. Since then, seventy or more voluntary *pro se* chapter 7 petitions prepared by Kasuba have been filed in this court.

Virtually all of Kasuba's business is derived from preparing chapter 7 petitions and accompanying documents. Kasuba also has prepared an employment contract for a medical doctor, for which he charged $35.00, and prepared a quitclaim deed, for which he charged $25.00.

On February 10, 1993, the United States Trustee brought the above adversary actions against Kasuba. The United States Trustee maintains that the services provided by defendant amount to the unauthorized practice of law, in violation of 42 Pa.C.S.A. § 2524, and requests that he be enjoined from rendering such services in this court in the future.

After appropriate notice was given, an emergency hearing was held on February 16, 1993. Kasuba appeared at the hearing and determined to represent himself after the court had advised him that any testimony he might give would be of record and might be used against him in other proceedings. Kasuba then testified at length on his own behalf and denied that his conduct amounted to the unauthorized practice of law.

The court inquired of the United States Trustee and of Kasuba at the close of the hearing whether any additional evidence would be presented if another hearing were held at a later time. Both parties informed the court that nothing additional would be presented and agreed that no further hearings were necessary.

–II–

ANALYSIS

■ State law is to be considered when determining whether the unauthorized practice of law has occurred in a bankruptcy court. *See In re Bachmann*, 113 B.R. 769, 772 (Bankr.S.D.Fla.1990); *In re Preston*, 82 B.R. 28, 30 (Bankr.W.D.Va.1987);

*Matter of Arthur*, 15 B.R. 541, 544–45 (Bankr.E.D.Pa.1981).

■ 42 Pa.C.S.A. § 2524 (Purdon's Supp. 1992) provides as follows:

Any person who within this Commonwealth shall practice law, or who shall hold himself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney at law, attorney and counselor at law, counselor, or the equivalent in any language, in such a manner as to convey the impression that he is a practitioner of the law of any jurisdiction, without being an attorney at law or a corporation complying with 15 Pa.C.S. Ch. 29 (relating to professional corporations), commits a misdemeanor of the third degree.

The purpose of such legislation:

... is not to secure to lawyers a monopoly, however deserved, but, by preventing the intrusion of inexpert and unlearned persons in the practice of law, to assure to the public adequate protection in the pursuit of justice, than which society knows no loftier aim.

*Shortz v. Farrell*, 327 Pa. 81, 91, 193 A. 20, 24 (1937). *See also Childs v. Smeltzer*, 315 Pa. 9, 171 A. 883 (1934). In short, the statute is designed to protect and secure the public's interest in competent legal representation. *Matter of Arthur*, 15 B.R. at 544.

Kasuba, an individual, admits that he is not an attorney at law and is not authorized to practice law in Pennsylvania or in any other jurisdiction. He denies, however, that the previously-described activities amount to unauthorized practice of law. According to Kasuba, he served as an amanuensis who performed the purely clerical task of typing the appropriate information in the relevant places on the documents which comprised the bankruptcy filings of the above-captioned debtors. Such activities, he insists, could be performed by anyone having an average layperson's grasp of bankruptcy law.

The issue presented is: whether Kasuba's actions constitute "the practice of law" for purposes of Section 2524. If they

do, those actions violate Section 2524 because he is not authorized to practice law.

It is neither possible nor practical to define with exactitude what constitutes practicing law. Any such endeavor is "more likely to invite criticism than to achieve clarity". *Shortz*, 327 Pa. at 84, 193 A. at 21.

The focus when determining whether a given action constitutes practicing law is upon whether its performance requires "the exercise of legal judgment". If it does, one is practicing law. *Dauphin County Bar Ass'n v. Mazzacaro*, 465 Pa. 545, 553, 351 A.2d 229, 233 (1976). One is practicing law when performing the action involves legal knowledge, training, skill, and ability beyond what the average layperson possesses. *See Matter of Arthur*, 15 B.R. at 546, (*citing Shortz*, 327 Pa. at 85, 193 A. at 21–22).

Kasuba's insistence that he was merely providing a clerical service and was not practicing law by the above standard is without merit. Whether or not Kasuba and his clients realized it, he practiced law when he performed the above activities.

Providing copies of official forms required for filing a bankruptcy petition is a legitimate and necessary public service. A typing service that merely transcribes written information provided by clients is a service that non-attorneys legitimately may provide. *See In re Bachmann*, 113 B.R. 769, 774 (Bankr.S.D.Fla.1990). A typing service may not, however, make inquiries nor answer questions pertaining to completion of bankruptcy forms and schedules and may not give advice to clients as to how they should be filled out. *Id.* Moreover, the solicitation and preparation of the forms and schedules *by a typing service* constitutes practicing law. *See In re Herren*, 138 B.R. 989, 994 (Bankr.D.Wyo.1992) (*citing In re Grimes*, 115 B.R. 639, 643 (Bankr.D.S.D.1990)).

Kasuba's preparation of the schedules and other forms involved the exercise of legal judgment, training, and skill far in excess of what the average layperson reasonably could be expected to possess. For example, the average layperson would *not* be expected to know: what an insider is; what a setoff is; what an executory contract is; the difference between a secured and an unsecured claim; what an exemption is or the basis for claiming it; and the significance of the automatic stay and what actions are in violation of it.

Indeed, many of the answers provided by Kasuba require expertise beyond what many attorneys who do not regularly practice bankruptcy law possess. Many of the questions on the schedules and other forms are highly technical and are difficult even for experienced bankruptcy practitioners to comprehend. For instance, questions concerning exemptions and what constitutes the "ordinary course of business" only recently have been resolved by the United States Supreme Court.

Kasuba claims that he knows more about bankruptcy law than does the average layperson because of his paralegal training and because he consults updated manuals on bankruptcy law as soon as they become available in bookstores. He may or may not know more about bankruptcy law than does the average layperson. But, even if he does, his understanding of bankruptcy law is flawed and falls far short of what is required of one who practices law and advises clients. For instance, it became apparent from Kasuba's testimony at hearing that his grasp of exemptions and secured claims is faulty. One is left to wonder whether he also is fundamentally confused about other basic bankruptcy concepts. Were Kasuba an attorney, his actions conceivably could result in malpractice law suits by those whom he has advised. Unfortunately, he personally has filed under chapter 7 of the Code and he carries no malpractice insurance. Anyone damaged as a result of his activities has no avenue for recourse.

Section 2524, *supra*, is designed to protect members of the public who require competent legal assistance from individuals like Kasuba. He exemplifies the

type of person the Pennsylvania legislature had in mind when it enacted the statute.[1]

■ Section 2524 provides only that one who engages in the unauthorized practice of law is guilty of a misdemeanor. This does not mean, however, that a court having equitable powers may not prospectively enjoin future unauthorized practicing of law. Pennsylvania courts have determined that an injunction may property issue when the criminal sanction is not adequate to protect the public from continuing unauthorized practice. *See Dauphin County Bar Ass'n,* 465 Pa. at 550–51 n. 4, 351 A.2d at 232 n. 4. Accordingly, Kasuba will be enjoined from the unauthorized practice of law and ordered to cease and desist from preparing bankruptcy petitions and accompanying documents in the manner described previously.

One additional matter must be addressed.

■ Kasuba did not petition the bankruptcy court for authorization to serve as attorney for the above debtors. Indeed, any such request by Kasuba would have been denied for the obvious reason that he is not authorized to practice law.

Section 329 of the Code provides as follows:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services,

the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 or this title; or

(2) the entity that made such payment.

11 U.S.C. § 329.

Section 329(a) requires an attorney who represents a debtor to file with the court a statement of compensation paid or agreed to be paid for services rendered or to be rendered in connection with the case. Section 329(b) permits the court to examine the reasonableness of compensation paid and, if it is excessive, authorizes the court to order the return of any excessive payments made either to the estate or to the entity that made the payment.

■ This provision, in particular section 329(b), applies with equal force to laypersons who engage in the unauthorized practice of law before a bankruptcy court. *See In re McCarthy,* 149 B.R. 162, 23 BCD 1346, 1349 (Bankr.S.D.Cal.1992). It would be anomalous if the Code required court review of fees charged by an attorney but did not permit court review of fees charged by a layperson who has provided legal advice concerning a bankruptcy case. *See In re Fleet,* 95 B.R. 319, 338 (E.D.Pa.1989). A layperson who is not authorized to practice law and who is not authorized by the bankruptcy court to provide legal assistance to a debtor may be required to disgorge all sums received for services provided. *See In re Grimes,* 115 B.R. 639, 650 (Bankr. D.S.D.1990).

As has been noted, Kasuba admitted to preparing at least seventy bankruptcy petitions which were filed in this court. Kasu-

---

**1.** Neither the sign allegedly posted on the wall of Kasuba's office, which states that he does not give legal advice, nor the "agreement" clients were allegedly required to sign, which states that neither acts as an attorney nor gives legal advice, alters the conclusion just reached. Whether or not Kasuba and his clients so real-

ized, Kasuba practiced law. Section 2524 does not take into account the intentions of Kasuba and/or his clients. Moreover, it does not appear to permit a client to waive the proscription against the unauthorized practice of law so as to allow one who is not authorized to do so to render legal advice to a client.

ba will be directed to provide to the United States Trustee a list of all petitions prepared by him which have been filed in this court and an accounting of the fees collected by him in all those cases. In addition, he will be required at that time to disgorge the fees he has collected in the above eight bankruptcy cases and to return them to those debtors. Should the United States Trustee request, within a reasonable period of time, that Kasuba also be required to disgorge fees collected by him in the remaining cases, the court will consider the request.

An appropriate order shall be issued.

### ORDER OF COURT

AND NOW at Pittsburgh this 5th day of March, 1993, in accordance with the accompanying Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that Robert Kasuba, d/b/a Affordable Legal Assistance, is enjoined from the unauthorized practice of law and is **ORDERED** to cease and desist from preparing in the manner described in the Memorandum Opinion any more bankruptcy petitions or other documents for filing in this court.

IT FURTHER IS **ORDERED, AD-JUDGED** and **DECREED** that Robert Kasuba, doing business as Affordable Legal Assistance, provide to the United States Trustee within thirty (30) days of this order a certified list of all petitions and other documents prepared by him for filing in this court and of the fees collected by him for services rendered in those cases.

IT FURTHER IS **ORDERED, AD-JUDGED** and **DECREED** that Robert Kasuba, doing business as Affordable Legal Assistance, disgorge the fees collected by him in the above-captioned bankruptcy cases and return them to debtors within thirty (30) days of this order.