In re Christine KAITANGIAN, Debtor.

In re Dixie R. HENRY, Debtor.

In re Corrie Ruth BAKER, Debtor.

In re Carolyn A. CAMERA, Debtor.

In re Scott T. HANSEN and Theresa M. Hansen, Debtors.

In re Christina M. McMARTIN, Debtor.

In re Tillie SANCHEZ, Debtor.

Bankruptcy Nos. 96–01692–B7, 96–06354–M7, 96–07367–H7, 96–09272–A7, 96–08789–M7, 96–08788–A7, 96–07639–A7.

United States Bankruptcy Court,
S.D. California,
San Diego Division.

Jan. 23, 1998.

Christine Kaitangian, San Anselmo, CA, Dixie R. Henry, Corrie Ruth Baker, Oceanside, CA, Carolyn A. Camera, Vista, CA, Scott T. & Theresa M. Hansen, Christina M. McMartin, Tillie Sanchez, Oceanside, CA, for Debtor in Pro Per.

Harold Taxel, La Jolla, CA, trustee for Debtor Camera.

Gerald Davis, Coronado, CA, trustee for Debtor Sanchez.

Gregory Akers, San Diego, CA, trustee for Debtors McMartin & The Hansens.

Ralph O. Boldt, San Diego, CA, trustee for Debtors Kaitangian, Henry & Baker.

Ronald V. Filippone, Ronald V. Filippone, II, U.S. Paralegal Service, Oceanside, CA, for Respondent in Pro Per.

David A. Ortiz, San Diego, CA, for Office of U.S. Trustee.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

The United States Trustee ("UST") filed a motion for imposition of fines and disgorgement of fees for violations of 11 U.S.C. § 110,[1] and for declaratory relief regarding the unauthorized practice of law against U.S. Paralegal Service ("USPS"), Ronald V. Filippone ("Filippone"), and Ronald V. Filippone, II ("Filippone II") (collectively the "Filippones").

This proceeding is a contested matter pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 9014. The above-referenced bankruptcy cases were consolidated for an evidentiary hearing which was held on November 18 & 19, 1997.[2]

This Court has jurisdiction to determine this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

### FACTS

According to the stipulated facts contained in the Joint Pre–Trial Order entered July 30, 1997, USPS is the fictitious business name of Filippone and the Filippones are bankruptcy "petition preparers" as defined under

---

1. Unless otherwise indicated, all statutory references herein are to Title 11 of the United States Code ("Bankruptcy Code").

2. The UST was unable to secure the attendance of debtor Dixie R. Henry. Accordingly, the Court did not consider any violations in that case.

§ 110(a)(1).[3] During 1995 through 1997, USPS advertised its services in the *North County Times* and in the "Paralegals" section of the *Pacific Bell Smart Yellow Pages* ("*Yellow Pages*").

Communications between the UST's office and Filippone began over three years ago. Assistant UST John Patrick Boyl ("Boyl") testified that he began reviewing case files to determine which petition preparers were in compliance with the newly enacted § 110 which became effective for cases filed after October 22, 1994. On December 6, 1994, Boyl sent Filippone a letter ("December 1994 Letter") with a copy of the Congressional Record of October 4, 1994, which included the entire text of § 110. The December 1994 Letter stated:

> Re: Christopher and Brenda Bickerstaff Bankruptcy Case Number 94–11582–B7

> Dear Mr. Filippone:

> A review of documents prepared by your office in the above-referenced case indicates that those documents were not prepared in accordance with the provisions of Section 308 of the BANKRUPTCY RE-FORM ACT OF 1994 and TITLE 11 U.S.C. SECTION 110.

> You are urged to comply immediately with all sections of the new law and be advised that this office is prepared to file the appropriate motions and complaints to enforce this law, should your firm and individuals therein continue to ignore the law.

> Should you have any questions about this correspondence, please contact the undersigned at (619) 235–4798. Thank you.[4]

Although the December 1994 Letter to Filippone did not identify specific violations of § 110, subsequent testimony and documentary evidence reveal that in late 1994, Boyl was concerned about Filippone's prac-tice of overcharging clients for preparing the bankruptcy petition and schedules and collecting filing fees from debtors. Apparently, Filippone charged his clients $200.00 whereas the UST's office claimed that $50.00 was a reasonable fee to charge for typing a bankruptcy petition, schedules and statement of affairs. After receiving the December 1994 Letter, Filippone stopped reporting the $200.00 fee for preparing the petition, schedules and statement of affairs and began reporting a $50.00 charge to prepare these same documents and $150.00 to file the documents with the bankruptcy court.

On April 17, 1995, Boyl and David Ortiz ("Ortiz"), a staff attorney for the UST's office, met with Filippone at the UST's office. On April 27, 1995, Boyl sent Filippone a letter ("April 1995 Letter") memorializing the April 17, 1995, meeting and advising Filippone that his practice of itemizing the $200.00 fee to reflect a $50.00 charge for preparing the petition, schedules and statement of affairs and $150.00 to file these documents with the bankruptcy court, was unacceptable. Boyl further advised Filippone that, "the bankruptcy courts in this district have held that $50.00 is a reasonable fee to charge for typing a petition, schedules and statement of affairs." Boyl also advised Filippone that § 110 precluded him from accepting filing fees from debtors and charging to file the petition, schedules and statement of affairs. Boyl suggested that Filippone, "confine [his] bankruptcy practices to those allowed by law and to seek counseling on the law itself if [he did] not understand how it affect[ed] [his] practice ."

Filippone testified that he continued to attempt to resolve the alleged violations of § 110 with the UST. According to Filippone, on September 5, 1996, he had a telephone conference with Ortiz and they agreed on charges which they could both live with. However, Filippone offered no specifics and,

---

3. Section 110(a)(1) defines a "bankruptcy petition preparer" as "a person, other than an attorney, who prepares for compensation a document for filing."

4. Filippone testified in his declaration that it was he who initiated the contact with the UST's office. Specifically, he testified that on December 4, 1994, he called Boyl's office regarding § 110 and wanted a copy of the new regulations. He testified that two days later he received the letter from Boyl, dated December 6, 1994. On cross-examination, Boyl adamantly denied Filippone's contention that he had initiated the contact with Boyl. This Court takes judicial notice that December 4, 1994, was a Sunday.

apparently, no agreement was reached since the UST initiated the current motion on December 30, 1996.

*DISCUSSION*

## I. THE CONSTITUTIONAL ISSUES.

### A. RESTRAINT OF TRADE.

 Filippone contends the provisions of § 110 are an unconstitutional restraint on trade. The party challenging the statute has the burden of proving that it is unconstitutional. *In re Rausch*, 197 B.R. 109, 117 (Bankr.D.Nev.1996). The Court notes that Filippone offers no specifics and cites no authority to support his contention which makes it impossible for this Court to address it. To the extent Filippone is claiming that the provisions of § 110 are unconstitutional in that they deny him the right to pursue his chosen calling or profession in violation of the Equal Protection Clause that argument must fail. *See Madarang v. Bermudes*, 889 F.2d 251, 253 (9th Cir.1989) *cert. denied*, 498 U.S. 814, 111 S.Ct. 54, 112 L.Ed.2d 29 (1990) (right to pursue a calling is not a fundamental right for purposes of the Equal Protection Clause); *In re Adams*, 214 B.R. 212, 218 (9th Cir. BAP 1997) (right to pursue calling as petition preparer not a fundamental right). Accordingly, the Court finds that Filippone has failed to meet his burden on this issue.

### B. FIRST AMENDMENT VIOLATIONS.

 Filippone contends that § 110(f)(1), which prohibits a bankruptcy petition preparer from using "the word 'legal' or any other similar term in advertisements, or advertising, under any category that includes the word 'legal' or any similar term" is an unconstitutional restraint of his First and Fourteenth Amendment rights. In support of his position, Filippone cites *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991)[5] and *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 100 S.Ct.

2035, 64 L.Ed.2d 741 (1980).[6] Both decisions are distinguishable from these cases.

Section 110(f)(1) involves the regulation of advertising. Advertising is "commercial speech" for purposes of constitutional analysis. Commercial speech is defined as expression related to the economic interests of the speaker and its audience, generally in the form of a commercial advertisement for the sale of goods and services. *See Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66–67, 103 S.Ct. 2875, 2879–81, 77 L.Ed.2d 469 (1983); *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 561, 100 S.Ct. 2343, 2348–49, 65 L.Ed.2d 341 (1980). The First Amendment, however, has never been held to protect commercial speech that is inherently misleading or deceptive. *In re R.M.J.*, 455 U.S. 191, 203, 102 S.Ct. 929, 937–38, 71 L.Ed.2d 64 (1982); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771–72, 96 S.Ct. 1817, 1830–31, 48 L.Ed.2d 346 (1976).

The use of the word "paralegal" in Filippone's advertising creates the misleading impression that the Filippones and the USPS staff are qualified to give legal advice, when in reality, they can lawfully provide none. *See In re Hobbs*, 213 B.R. 207, 215 (Bankr. D.Me.1997) (term "paralegal" fosters consumer confusion); *In re Calzadilla*, 151 B.R. 622, 626 (Bankr.S.D.Fla.1993) (typing service may not advertise in a misleading fashion which leads reasonable lay person to believe the typing service offers the public legal services, legal advice or legal assistance regarding bankruptcy services). The Court finds that the tenor of Filippone's advertisement in the *North County Times* is that the bankruptcy services offered by USPS are not limited to simple clerical functions. The advertisement gives the distinct impression that USPS is able to provide all services, including legal services, associated with a debtor's bankruptcy. Specifically, the advertisement states that USPS is the "only paralegal company in San Diego that is able to handle your bankruptcy." The advertise-

---

**5.** Court found nude dancing could be regulated without violating First Amendment.

**6.** The Court found that California Constitution permits individuals to exercise free speech and petition rights on privately owned property to which public is invited.

ment also contains the phrase, "no lawyers involved save money." The use of the word "paralegal," coupled with the representation that USPS is "able to handle your bankruptcy" creates the impression that USPS personnel can provide legal advice, but at a lower cost than a lawyer.

The declarations of Camera, Hansen, McMartin and Sanchez all support the UST's contention that the Filippones and USPS were providing legal services. As more fully set forth *infra*, these debtors came to USPS with little or no knowledge of bankruptcy law and relied upon USPS to provide guidance in all aspects of their bankruptcy case including assistance in determining which Chapter to file, assistance in selecting exemptions and assistance in classifying and reaffirming debt. Accordingly, the Court concludes that Congress, acting within the bounds of the First Amendment, may constitutionally restrict USPS' misleading commercial speech.

## II. SELECTIVE PROSECUTION.

■ Filippone alleges that the UST's office has conspired against and harassed the Filippones and USPS and has selectively prosecuted them.[7] (Filippone Memorandum of Law 6:19–20 and Filippone Declaration 3:26–28). In support, Filippone argues that the UST's office promised to dismiss a similar motion filed against Raelyn Guyer ("Guyer") in exchange for Guyer's testimony in this matter.[8] The UST's office evidently told Guyer that if she testified truthfully in this case, it would dismiss its motion against her alleging violations of § 110.

■ Filippone has the burden of proving selective prosecution. *U.S. v. Benny*, 786 F.2d 1410, 1419 (9th Cir.1986) (citations omitted). Filippone must demonstrate (1) that others similarly situated have not been prosecuted, and (2) that he was selected for prosecution on the basis of an impermissible

---

**7.** The Court notes that selective prosecution arguments frequently appear in a criminal context. The Court is doubtful that such an argument applies in an injunctive proceeding such as this.

**8.** Guyer and Filippone had previously been involved in a contractual arrangement whereby Guyer could use the business name of U.S. PARALEGAL SERVICES OF ESCONDIDO for

ground such as race, religion or exercise of constitutional rights. *Id.* Filippone does not meet his burden. This Court found Guyer's testimony to be both forthright and credible. Guyer testified that she did not believe that the UST's case against her hinged on how she testified in this matter. Guyer also testified that she closed her office and no longer does paralegal work. Further, the Court notes that it has had similar motions filed by the UST's office against petition preparers, paralegals or typing services for violations of § 110 before it.[9] Finally, Filippone raised no issues regarding his selective prosecution on impermissible grounds such as race, religion or exercise of constitutional rights.

## III. UNAUTHORIZED PRACTICE OF LAW.

"Section 110(k) provides that the ability of nonlawyers to practice before bankruptcy courts in a given jurisdiction will be governed by '[relevant state] law, including rules and laws that prohibit the unauthorized practice of law,' as well as by § 110 itself." 2 *Collier on Bankruptcy* ¶ 110.12 (15th ed.1997). Cal. Bus. & Prof.Code § 6125 states: "No person shall practice law in this State unless he is an active member of the State Bar." Cal. Bus. & Prof.Code § 6126, subdivision (a) provides: "Any person advertising or holding himself or herself out as practicing or entitled to practice law or otherwise practicing law who is not an active member of the State Bar, is guilty of a misdemeanor." The Cal. Bus. & Prof.Code does not provide a definition for the term "practicing law."

The California Supreme Court has noted that,

> [A]s the term is generally understood, the practice of law is the doing and performing services in a court of justice in any matter depending therein throughout its various stages and in conformity with the adopted rules of proce-

one and a half years and would receive assistance from Filippone in the operation and start-up of her paralegal business.

**9.** The Court will take judicial notice of specific cases submitted by the office of the UST if this becomes necessary.

dure. But in a larger sense it includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be depending in a court.

. . .

In close cases, the courts have determined that the resolution of legal questions for another by advice and action is practicing law "if difficult or doubtful legal questions are involved which, to safeguard the public, reasonably demand the application of a trained legal mind."

*Baron v. City of Los Angeles,* 2 Cal.3d 535, 541–42, 86 Cal.Rptr. 673, 469 P.2d 353 (1970).

In deciding whether an eviction service was engaged in the unauthorized practice of law, the appellate court in *People v. Landlords Professional Services,* 215 Cal.App.3d 1599, 1608, 264 Cal.Rptr. 548 (4th Dist.1989) found:

> [T]hat such services do not amount to the practice of law as long as the service offered by [Landlords Professional Service] was merely clerical, *i.e.,* the service did not engage in the practice of law if it made forms available for the client's use, filled the form in at the specific direction of the client and filed and served those forms as directed by the client. Likewise, merely giving a client a manual, even a detailed one containing specific advice, for the preparation of an unlawful detainer action and the legal incidence of an eviction would not be the practice of law if the service did not personally advise the client with regard to a specific case.

The court further commented:

> The advertisement used by LPS implies its eviction services were not limited to clerical functions. The tenor of the advertisement was that the service accomplished evictions. The advertisements' statement "Call & talk to us" was a general invitation for clients to discuss the matter of eviction with LPS. Bill Watts' LPS business card listed his title as "Counselor." In short, LPS cast about itself an aura of expertise concerning evictions.

*Id.* at 1608, 264 Cal.Rptr. 548.

The UST contends that the Filippones provided the following services: (1) giving advice and selecting exemptions for debtors; (2) giving advice regarding the selection of the appropriate bankruptcy Chapters; (3) giving advice regarding reaffirmation of debts; (4) giving advice regarding the timing of filing bankruptcy; (5) giving advice regarding the classification of debt; and (6) giving advice regarding the dischargeability of student loans. For the reasons set forth below, the Court finds that the various services which the Filippones performed constitute the unauthorized practice of law.

## A. CALIFORNIA EXEMPTION LAW.

■ Baker, Camera, Hansen,[10] McMartin, Kaitangian and Sanchez testified that they had no prior knowledge of California exemption law nor did they instruct the Filippones which California exemption they wished to select.[11] The debtors also testified that they were not provided with any written information describing exemptions available under bankruptcy law in California by anyone at USPS. The debtors testified that after filling out a questionnaire supplied by USPS, they would receive a telephone call to return to the USPS office to sign their bankruptcy pleadings which were to be filed with the bankruptcy court.[12] When the debtors returned to sign the pleadings, a specific California exemption was claimed on their Schedule C. In other words, the Filippones chose the exemptions for the debtors.

---

**10.** Although Scott and Theresa Hansen filed a joint petition, only Theresa Hansen testified in this proceeding. Therefore, all references herein to Hansen are to Theresa Hansen.

**11.** California offers two sets of exemptions. California Code of Civil Procedure ("CCP") § 704 and CCP § 703.140. The latter is commonly known as the California "federal" exemption and incorporates, for the most part, the exemptions offered debtors under § 522(d).

**12.** The exception was Baker who testified that Filippone II had a questionnaire that he used to ask her questions. The only portion of the questionnaire she could recall completing was the section that asked for her name and address.

Filippone II provided further clarification in his declaration:

> [t]he software package that I use for bankruptcy is Specialty Software. I do not pick the exemptions for customers. I enter the item such as tools of trade at a value of $500.00, and that is all I have to do, the computer selects the proper exception [sic]. I remind each and every customer that I am not an attorney and I will not and can not [sic] give them any legal advise [sic].

The testimony of Guyer corroborates this procedure of selecting exemptions for clients. Guyer testified:

> In addition, with regards to exemptions, I observed both Ronald Filippone Sr., and Ronald Filippone II, interview prospective debtors and explain which set of exemptions should be used in a particular bankruptcy. Specifically, if the debtors owned a home, California Code of Civil Procedure § 704 (System "1") was selected for them as the basis for any property claimed exempt. If the debtors did not own a home, California Code of Civil Procedure § 703.140 (System "2") was selected for them as the basis for any property claimed exempt.

■■■ The Court finds that Filippone II's contention that the Bankruptcy Speciality Software "does it all" is disingenuous. Plugging in solicited information from questionnaires and personal interviews to a prepackaged bankruptcy software program constitutes the unauthorized practice of law. Moreover, advising of available exemptions from which to choose, or actually choosing an exemption for the debtor with no explanation, requires the exercise of legal judgment beyond the capacity and knowledge of lay persons. *In re Herren*, 138 B.R. 989, 995 (Bankr.D.Wyo.1992); *In re McCarthy*, 149 B.R. 162, 166 (Bankr.S.D.Cal.1992); *In re Webster*, 120 B.R. 111, 113 (Bankr. E.D.Wis.1990). Accordingly, the Court finds that the Filippones engaged in the unauthorized practice of law with respect to selecting exemptions for the debtors in these proceedings.

## B. ADVICE REGARDING SELECTION OF APPROPRIATE BANKRUPTCY CHAPTERS.

■■■ Hansen testified that Filippone II advised her, "that my husband and I would be better off filing a Chapter 7 proceeding rather than a Chapter 13 proceeding as we had intended." Hansen's testimony was unrebutted.

Hansen testified that she and her husband voluntarily dismissed their Chapter 7 case in response to a motion brought by the UST's office pursuant to § 707(b). Pursuant to Federal Rule Evidence 201, the Court takes judicial notice of the UST's motion to dismiss filed in the Hansens' case on September 26, 1996. The motion states, *inter alia*, that the claims listed were all consumer debts and that the Hansens had $2,037.00 monthly disposable income which could be used to satisfy their scheduled obligations at 100% in less than two years. As Hansen put it, "the effect of this was that all of the time, effort and money we had spent with USPS was for nothing."

McMartin also testified that Filippone *explained* to her the difference between Chapters 7 and 13 (emphasis added). Once again, this testimony was unrebutted.

Finally, Filippone admits this course of conduct in his Joint Memorandum of Law which states "[t]he debtors are given a [sic] information form explaining the difference between a chapter 7 and a chapter 13 and which they sign after reading [sic]."

"The question of whether to file a petition pursuant to Chapter 7 or Chapter 13 of the Code, involves the analysis of a complex and highly sophisticated series of statutory and common law provisions." *Matter of Arthur*, 15 B.R. 541, 546 (Bankr.E.D.Pa.1981). Such "advice requires the use of legal judgment requiring legal knowledge, training, skill, and ability beyond those possessed by the average layman." *Id.* at 547. Accordingly, the Court finds that the Filippones' advice and explanations regarding differences between Chapter 7 and Chapter 13 of the Code constitutes the unauthorized practice of law.

## C. ADVICE REGARDING REAFFIRMATION OF DEBTS.

 McMartin testified that Filippone explained to her the concept of "reaffirmation" of debts in reference to her car. Specifically, McMartin testified:

> During my meeting with Mr. Filippone, he looked over the questionnaires and asked what I wanted to do about the car. I told him I wanted to keep the car. He then told me that I could re-affirm the debt and keep the car. I did not know what re-affirming a debt meant. So he explained it to me.

Filippone then prepared the "Statement of Intention" for McMartin reaffirming her automobile debt.

Baker testified that during the course of her meeting with Filippone II, she told him that she wanted to keep her van. She testified that Filippone II said that she could do that, but that she would have to reaffirm the debt and keep making the payments. Baker further testified that although she understood she had to reaffirm the debt to keep her van, she was not familiar with which Bankruptcy Code section dealt with reaffirmation nor did she tell Filippone to use a Bankruptcy Code section on the Statement of Intention. On redirect examination, Baker testified that she did not know what § 524 meant. Baker's Statement of Intention states:

| Description of Property | Creditor's Name | Intention |
| --- | --- | --- |
| 1995 Toyota Previa LE/SC | Toyota Motor Credit Corp. | Reaffirm 524(c) * |

\* 524(c): Debt will be reaffirmed pursuant to Sec. 524(c).

---

Although there is no direct testimony on point, the Court finds that when Baker signed her bankruptcy pleadings, including the Statement of Intention, the language regarding § 524 had been typed in by Filippone II, or by employees of USPS who had been instructed to do so by Filippone II.

Finally, Hansen testified that after she had signed her bankruptcy pleadings and upon further review of the conformed copies of the bankruptcy pleadings, she noticed a document entitled "Chapter 7 Debtor's Statement of Intention" which appeared to state that she and her husband had "reaffirmed" certain debts. She further testified that she had never been advised about "reaffirmation" by Filippone II, did not know what it meant, and had not prepared the "Statement of Intention."

 In connection with preparing legal documents, such as the Statement of Intention, providing clients with explanations or definitions of such legal terms of art such as "reaffirmation" is, by itself, giving legal advice. *See Herren*, 138 B.R. at 995 (providing clients with definitions of legal terms of art is

giving legal advice). Accordingly, the Court finds that the Filippones and USPS have engaged in the unauthorized practice of law by explaining to debtors the legal term "reaffirmation" as the term is used in § 524(c).

## D. ADVICE REGARDING THE TIMING OF FILING CHAPTER 7 PETITIONS.

 Hansen testified that she met with Filippone II and discussed the timing for filing her Chapter 7 petition. Hansen testified that she asked Filippone II whether it would be better to file a marital separation before or after the bankruptcy proceedings and that he told her that she should file bankruptcy first. The testimony is unrebutted. The evidence also reflects that Hansen followed Filippone II's advice and allowed USPS to file the bankruptcy prior to her marital separation petition.

It is clear that Hansen not only sought Filippone II's advice, but relied on it as well. One court noted "[s]uch advice about the timing of an anticipated bankruptcy filing is a matter which requires legal expertise, since from that date flows numerous consequences

including the dischargeability of certain debts such as student loans and taxes, entitlement to discharge, recoverability of preferences, and maximization of exemptions." *Herren,* 138 B.R. at 995. Furthermore, the interplay between the bankruptcy laws and the marital dissolution laws complicates these issues. Accordingly, the Court finds that Filippone II engaged in the unauthorized practice of law by giving advice to Hansen regarding whether she should file for bankruptcy prior to filing for separation.

## E. CLASSIFICATION OF DEBT.

■ McMartin testified that she did not know whether a debt on a house which she had previously owned with her husband should be listed on her bankruptcy papers. She testified that as part of a divorce decree the house was quitclaimed to her husband. McMartin testified that Filippone advised her "that by including the debt on the house in my bankruptcy, I could 'sever my ties' with the house." McMartin also testified that prior to meeting with Filippone she did not know what an unsecured debt was and where these debts should be listed on her bankruptcy papers. She testified that Filippone "did that for me as well." Giving advice about whether a debt is secured or unsecured requires legal expertise. *In re Harris,* 152 B.R. 440, 445 (Bankr.W.D.Pa. 1993). Accordingly, the Court finds that Filippone's advice and recommendations to McMartin on how to classify her debt constitute the unauthorized practice of law.

## F. ADVICE REGARDING DISCHARGE-ABILITY OF STUDENT LOANS.

■ Baker testified that she discussed her student loan with Filippone and that he told her he did not believe it would be discharged in her bankruptcy. The Court finds that advising debtors on dischargeability issues constitutes the unauthorized practice of the law. *Arthur,* 15 B.R. at 547.

The above incidents were not isolated events. A course of conduct involving the unauthorized practice of law by the Filippones was corroborated by Guyer. Guyer testified that as part of her agreement with Filippone, she was provided with copies of a "customer questionnaire" to be used in the preparation of bankruptcy cases. She testified that the questionnaire was not simply a blank copy of the bankruptcy petition, schedules, Statement of Financial Affairs, and Statement of Intention. The questionnaire did not ask the debtors for information necessary to fill out Schedule C (Exemptions), Schedule D (Secured Creditors), Schedule E (Priority Creditors), Schedule F (Unsecured Creditors), Schedule G (Executory Contracts and Unexpired Leases), or Schedule H (Co-Debtors). In addition, the questionnaire's "Financial Affairs" section did not contain all the questions found in the official form "Statement of Financial Affairs."

Guyer further testified that her training included sitting in on debtor interviews with the Filippones. She observed the Filippones solicit information from the debtors that was not included in the questionnaire. She testified that Filippone would ask debtors whether they wanted to keep a credit card account and/or the property purchased with a credit card or surrender the property. This information was then used to prepare the "Statement of Intention." Guyer testified that during her training period, she also observed the Filippones explain to prospective debtors the difference between Chapter 7 and Chapter 13. The Court has previously discussed Guyer's testimony regarding the Filippones' process of selecting exemptions for debtors.

Although the Filippones deny that they ever practiced law and testified about disclaimers given both orally and in writing, the evidence contradicts these assertions. The Filippones had personal contact with the debtors during which the Filippones explained forms, procedures and terms such as "reaffirmation," selected exemptions, advised debtors on whether to file a Chapter 7 or Chapter 13, and advised debtors on the timing of their anticipated bankruptcy. The personal contact coupled with the explanations and advice gave rise to a relationship of trust between the parties that is tantamount to that of an attorney-client. The Filippones analyzed the factual information received on the debtors' questionnaires and from personal interviews. The Filippones then exercised legal judgment in making various decisions for the debtors as set forth above. Given the

extent of the personal contact, advice and counseling, it is apparent that a relationship of trust and confidence developed between the parties with the debtors trusting that the Filippones would prepare their bankruptcy petitions and related pleadings correctly. See Landlords' Professional Services, 215 Cal.App.3d at 1599, 264 Cal.Rptr. 548 (court found personal contact was a key factor in finding defendant engaged in the unauthorized practice of law).[13]

Finally, portions of the House Report on the Bankruptcy Reform Act of 1994 regarding § 110 make it clear that the services of bankruptcy petition preparers are strictly limited to typing bankruptcy forms. Specifically, the House Report states:

> This section adds a new section to Chapter 1 of title 11 United States Code to create standards and penalties pertaining to bankruptcy petition preparers. Bankruptcy petition preparers not employed or supervised by any attorney have proliferated across the country. While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors. These preparers often lack the necessary legal training and ethics regulation to provide such services in an adequate and appropriate manner. These services may take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system....

(H.R. 103–834, 103rd Cong., 2d Sess. ¶ 40–41, 140 Cong. Rec. H10770) (Oct. 4, 1994). The evidence shows that the Filippones' services far exceeded those of a typing service. As previously discussed in Part I(B) supra, the tenor of Filippone's advertisement in the North County Times is that the bankruptcy services offered by USPS were not limited to simple clerical functions. The declarations of

Camera, Hansen, McMartin and Sanchez and Guyer support the UST's contention that the Filippones and USPS were providing legal services.

## IV. VIOLATIONS OF 11 U.S.C. § 110.

### A. FALSE STATEMENTS OF COMPENSATION RECEIVED IN VIOLATION OF § 110(h)(1).

■ 11 U.S.C. § 110(h)(1) provides:

> Within 10 days after the date of the filing of a petition, a bankruptcy petition preparer shall file a declaration under penalty of perjury disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor.

The uncontradicted evidence reveals that Filippone charged Baker, Hansen, McMartin, Kaitangian, and Sanchez $200.00 each for the preparation and filing of their respective bankruptcies. Camera was charged $253.00. However, on the Disclosure of Compensation of Bankruptcy Petition Preparer form ("Statement of Compensation"), prepared in each of the cases, only $53.00 was disclosed. Filippone declared that, "in each and every case I have disclosed a $53.00 for the typing of the forms...." In other words, Filippone contends that of the $200.00 received from each debtor, and of the $253.00 received from Camera, only $53.00 related to the actual typing of the forms. Filippone apparently believes that a literal reading of the Statement of Compensation, "For document preparation services, I have agreed to accept ... $_____," only requires him to disclose his actual charges for typing the bankruptcy petition and other pleadings and does not require him to disclose the balance of the compensation received from each debtor.

Although neither Filippone or Filippone II testified as to what the remainder of the fee was used for, in their Joint Memorandum of

13. The court in Landlords Professional Services reviewed similar cases in other jurisdictions. For example, in Oregon State Bar v. Gilchrist, 272 Or. 552, 538 P.2d 913 (1975) the court concluded that it was not an unauthorized practice of law to advertise and sell divorce kits so long as the service had no personal contact with a client. In New York Lawyers' Assn. v. Dacey, 21 N.Y.2d 694, 234 N.E.2d 459, 287 N.Y.S.2d 422 (1967), the court found sale of Norman F. Dacey's book "How To Avoid Probate" was not an unauthorized practice of law since there was no personal contact or relationship with any particular individual so that there was no relationship of competence and trust established which is so necessary to the status of attorney and client.

Law in Opposition to the UST's motions, Filippone lists a hypothetical ¶ 9 of a Statement of Affairs for a hypothetical debtor named John Doe. Paragraph 9 of the Statement of Affairs is entitled "*9. Payments Related to Debt Counseling or Bankruptcy.*" With respect to the payment portion, Filippone discloses the following:

Payor: John Doe
Payment/Value: $53.00 Filling Out of Forms
$40.00 Currier [sic] Fees
$21.50 BK Forms
$76.80 128 Copies
$ 8.70 Assembly/Hole Punching

The Court takes judicial notice that the total of the hypothetical charges is $200.00. The Court also notes that the Filippones offered no evidence to corroborate the various charges. For example, there were no invoices from courier services itemizing a $40.00 courier charge (apparently for filing the debtors' bankruptcy pleadings with the bankruptcy court). The charge for copies amounts to $.60 per page, 3 times the $.20 per page authorized in the UST Guidelines for this district.[14] Further, it was disclosed that Filippone does not purchase bankruptcy forms, but generates the forms on his Speciality Software Bankruptcy Package.

Apparently, Filippone began reporting only $53.00 of the $200.00 received because of opposition from the UST's office. [*See* April 1995 Letter—Exhibit "82"]. Hansen's testimony corroborates the Court's finding. Hansen testified that while she was reviewing the contents of the paperwork, she noticed that the Statement of Compensation said that she had only paid $53.00 to have the documents prepared. Hansen made a point of returning to the offices of USPS and spoke directly with Filippone regarding the discrepancy. Hansen testified that Filippone told her, "that the fee had to be documented that way because the Court did not allow them to charge more than $53.00. I was then told for the first time that the balance of the $200.00 fee over the $53.00 was for 'copy costs, messenger and miscellaneous services and overhead.' "[15]

Guyer also testified:

In addition to the paralegal training I received, I also received training on how to prepare the disclosure of compensation required in each case. Specifically, I was told by both Ronald Filippone Sr., and Ronald Filippone, II, that $53.00 was the amount to indicate as fees, because the courts did not allow higher fees. And, that any additional fees up to the Two Hundred Dollar fee that was charged, should be classified as assorted expenses such as forms pack, copies, and mailing/delivery to bankruptcy court.

The Court is troubled by the conduct of the Filippones who intentionally failed to disclose the entire $200.00 fee received from the debtors. The testimony of Boyl and the April 1995 Letter indicate that the UST objected to Filippone charging $200.00 for preparing the bankruptcy schedules and petitions over two years ago. Yet, Filippone continued the practice and simply itemized the charges differently assuming he would avoid detection by adopting the practice of not disclosing on either the Statement of Compensation or in ¶ 9 of the Statement of Affairs any fee received in excess of $53.00. Most troubling is the fact that the Statement of Compensation is signed under penalty of perjury.

 Section 110(h)(1) requires the petition preparer to disclose, "*any* fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor." (Emphasis added). The plain language of the statute does not limit the fee received to only fees incurred in connection with typing the petition and schedules. Filippone testified:

My failure to show or demonstrate that I have violated 11 U.S.C. § 110, if I have, is because of my ignorance of the law and the UST's failure to direct me as to what they are trying to enforce.

This testimony is plainly contradicted. As noted previously, Boyl initially identified the problem to Filippone in his April 1995 Let-

---

14. Guideline No. 4, Office of the United States Trustee, Southern District of California.

15. Except for Hansen who inquired about the fees, none of the other debtors were ever advised what the balance of the fee was for.

ter. In an effort to circumvent the Trustee's objection, the Filippones adopted the strategy of intentionally not disclosing all fees received from debtors in connection with their cases. Filippone's feigned ignorance is not supported by the evidence. Besides, "ignorance of the law, even if true, would not be reasonable cause to vitiate the imposition of fines." *In re Murray*, 194 B.R. 651, 658 (Bankr.D.Ariz.1996).

The deceptive disclosure, or lack thereof, in the case of Camera is particularly egregious. Filippone charged Camera $253.00 in addition to the $175.00 filing fee. Camera could only raise $153.00 of the $253.00 fee. Camera's case was subsequently filed with the $100.00 balance due and owing USPS. The Statement of Compensation, signed by Filippone II, listed the entire charge to be $53.00 and revealed a "Balance Due of $0.00." Camera filed bankruptcy in July 1996. In October, she received a bill for $100.00 for the balance owed. Camera testified she was unable to raise the $100.00. In December 1996, she received another bill for $100.00 with the notation typed on the bottom of the bill: "THIS WILL BE YOUR FINAL STATEMENT [sic] PLEASE PAY AMOUNT DUE OR WE WILL BE FORCED TO SERVE YOU WITH A LAWSUIT. FINAL NOTICE." Fortunately for Camera, the UST's office was investigating the case and she was advised by attorney Ortiz not to pay the bill. In Camera's case, Filippone not only violated § 110(h)(1), but also violated § 524 by attempting to collect a pre-petition dischargeable debt. *In re Hines*, 198 B.R. 769 (9th Cir. BAP 1996).[16]

■■■■ USPS is Filippone's sole proprietorship. Therefore, to the extent USPS has violated any statutory provisions, Filippone is personally liable. Filippone II testified that he has worked for USPS for approximately three years as an employee and receives a salary. The Court finds that Filippone has violated § 110(h)(1) by deliberately concealing the fact that he received an additional $147.00 from the debtors in these cases ($200.00 in the case of Camera). The penalty for violations under § 110(h)(2) requires the Court to disallow and order the immediate turnover to the bankruptcy trustee of any fee referred to in § 110(h)(1) if the fees are in excess of the value of services rendered for the documents prepared. Since the Court has previously found that Filippone has engaged in the unauthorized practice of law, all fees received shall be disgorged as fruits of illegal and improper actions, irrespective of the quantum meruit value of such services. *In re Gavin*, 181 B.R. 814, 821 (Bankr. E.D.Pa.1995) (citation omitted). Filippone is ordered to turn over all fees collected from each debtor (with the exception of Henry) to the respective bankruptcy trustees in each case within 30 days of service of this Court's order.[17]

## B. RECEIPT OF COURT FILING FEES IN VIOLATION OF 11 U.S.C. § 110(g)(1).

11 U.S.C. § 110(g)(1) provides:

> A bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition.

■■■■ The unrebutted evidence reveals that USPS collected the $175.00 court filing fee from each debtor in these cases. Further, Boyl's April 1995 Letter advised Filippone that the law precluded him from accepting the filing fees from the debtor and charging to file the petition. Filippone was further advised to seek legal advice if he did not understand the law and how it affected his practice. Filippone offered no evidence that he sought legal advice on the subject despite testifying that, "we work with many attorneys in the North County, James Beal, Diane Templen, Greg Doan and Michael Lesby, to name a few. . . . We constantly ask advise [sic] from these attorneys." Filippone presented no evidence that he sought advice on this particular issue and/or that the ad-

---

**16.** Camera received her discharge on October 17, 1996.

**17.** It should be noted that if the bankruptcy petition preparer fails to comply with the turnover order within 30 days of service of such order, then the Court shall also fine the bankruptcy petition preparer for not more than $500.00 for each failure to comply with the Court's order. 11 U.S.C. § 110(h)(4).

vice was contrary to Boyl's notification that Filippone was in violation of § 110. Filippone simply ignored Boyl's advice and warning and continued to collect the filing fees from the debtors. Filippone's argument of ignorance of the law or confusion with respect to these violations is likewise meritless.

Accordingly, the Court imposes the statutory fine of $500.00 against Filippone for each violation pursuant to § 110(g)(2) for a total of $3,000.00.

## C. FAILURE TO PROVIDE DEBTORS WITH COPIES OF DOCUMENTS PREPARED FOR FILING AT THE TIME THE DOCUMENTS WERE PRESENTED TO DEBTORS FOR SIGNATURE.

Section 110(d)(1) provides:

A bankruptcy petition preparer shall, not later than the time at which a document for filing is presented for the debtor's signature, furnish to the debtor a copy of the document.

 Baker, Hansen and McMartin testified that they did not receive copies of their respective Petition for Relief, Schedules A through J, Statement of Financial Affairs, and Statements of Intention at the time they signed the documents. The testimony was unrebutted. McMartin did not receive her copies until one week after the July 29, 1996, § 341(a) meeting, and only after she had requested them. Hansen was not provided copies of her pleadings until two weeks after she signed them. Baker was not provided with copies of the documents prepared for filing in her case until 5 or 6 weeks after she had signed them. Again, Filippone's alleged lack of comprehension of the law is no excuse, particularly since the UST's office had put Filippone on notice almost two years prior to the instant motions being filed.

"Reasonable cause" to violate a statutory requirement has been found in cases where the violation is unavoidable through no fault of the violator. *Rausch,* 197 B.R. at 117. The Filippones feeble excuses for their conduct such as being ignorant of or confused by the law fall far short of this standard. Accordingly, the Court imposes a fine of $500.00 against Filippone for each violation pursuant to § 110(d)(2) for a total of $1,500.00.

## D. USING THE WORD "LEGAL" IN ADVERTISEMENTS IN VIOLATION OF 11 U.S.C. § 110(f)(1).

Section § · 110(f)(1) provides:

A bankruptcy petition preparer shall not use the word "legal" or any similar term in any advertisements, or advertise under any category that includes the word "legal" or any similar term.

 The evidence shows that Filippone has violated and continues to violate § 110(f)(1) in two respects. First, he uses the word "legal" in his fictitious name of USPS. In addition, he advertises in the *Yellow Pages* under the category Paralegal. The UST requests that the Court impose the statutory fine of five hundred dollars ($500.00) for each of Filippone's violations under this subsection. However, the UST did not discuss what constitutes a separate violation under this section. The Court concludes that advertising in a publication, by itself, constitutes a single violation. *See Hobbs,* 213 B.R. at 215 (use of the term "paralegal" in each advertisement constitutes a separate violation). In addition, a reasonable interpretation of § 110(f)(2) requires that the person using the services of the bankruptcy petition preparer must have read the advertisement. *See In re Gavin,* 181 B.R. at 814 (Bankr.E.D.Pa.1995) (court found the Legal Aid Services ("LAS") liable for two violations of this subsection for using the word "legal" in its name where two debtors testified as to how they were misled by LAS' name); *People v. Forest E. Olson, Inc.,* 137 Cal.App.3d 137, 186 Cal.Rptr. 804 (1982) (reasonable interpretation of statute prohibiting false and misleading advertising would be that a single publication constitutes a minimum of one violation with as many additional violations as there are persons who read the advertisement or who responded to the advertisement by purchasing the advertised product or service or by making inquiries concerning the product or service).

 Camera and Hansen testified that they came to USPS after seeing the USPS ad in the *Yellow Pages.* The other debtors either did not testify regarding the *Yellow Pages* or *North County Times* advertisement

or in the case of Baker, came to USPS based on a referral from a friend. Accordingly, the Court finds there are four violations of § 110(f)(1) in this case. Each single publication in the *Yellow Pages* and the *North County Times* count as one violation each with the two remaining violations supported by the testimony of Hansen and Camera who went to USPS based on the USPS advertisement in the *Yellow Pages*. The Court imposes a fine of $500.00 for each violation for a total of $2,000.00.

## E. FRAUDULENT, UNFAIR OR DECEPTIVE ACTS IN VIOLATION OF 11 U.S.C. § 110(i)(1).

Section 110(i)(1) provides in pertinent part:

> [i]f a bankruptcy petition preparer violates this section or commits any fraudulent, unfair, or deceptive act, the bankruptcy court shall certify that fact to the district court, and the district court, on motion of the debtor, the trustee, or a creditor and after a hearing, shall order the bankruptcy petition preparer to pay to the debtor—

 Although the Court cannot find that any of the debtors suffered monetary damages other than the payment of excessive fees which the Court has ordered refunded, the Court finds that the intentional failure of the Filippones to disclose all fees paid by the debtors under penalty of perjury constitutes an unfair and deceptive act within the meaning of § 110(i)(1). Therefore, the Court certifies the foregoing facts to the United States District Court for further proceedings. The Court recommends to the district court that Filippone be assessed the statutory damage of $2,000.00 per case as set forth in § 110(i)(1)(B) for a total of $12,000.00. The Court recommends that Filippone II be assessed the statutory damage of $2,000.00, in the cases of Baker, Camera, the Hansens, Kaitangian and McMartin, for a total of $10,-000.00 because Filippone II falsely signed the Statement of Compensation in those cases.

The Court views § 110(i)(1) as a two step process. Once the Court finds an unfair and deceptive act, the statute mandates certification of that fact to the district court. After certification, the statute requires that a debtor, trustee or creditor bring a motion in the district court. The Court recognizes that the UST cannot pursue such a motion in the district court because the statute cannot be read to find the UST synonymous with a trustee in these cases. *See In re Schweitzer,* 196 B.R. 620, 625 (Bankr.M.D.Fla.1996); *see also In re Leavitt,* 209 B.R. 935, 942 (9th Cir. BAP 1997) ("The starting point in every case involving construction of a statute is the language itself") (citation omitted). "When the language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *Id.* (citation omitted).

Pursuant to 18 U.S.C. § 3057(a), this Court will advise the United States Attorney regarding the Filippones' violations of 18 U.S.C. § 152.

## V. INJUNCTIVE RELIEF.

 Injunctive relief is expressly authorized by both § 110(j)(1) and (j)(2)(B). Although the UST has not requested injunctive relief, this Court, *sua sponte,* enjoins the Filippones from acting as bankruptcy petition preparers.[18] The facts in these consolidated cases satisfy the requirements of § 110(j)(2)(A)(i)(I) and (III).

As noted above, the UST placed Filippone on notice of his violations of § 110 in late 1994 and continuing through 1995. Rather than comply with the law, Filippone attempted to find creative ways of avoiding the specific requirements of § 110, including resorting to fraudulent and deceptive conduct by intentionally failing to disclose the correct amount of fees he actually received from each of the debtors. Despite being advised by the UST to seek legal advice regarding § 110, he apparently refused to do so. He also engaged in the unauthorized practice of law despite a plethora of bankruptcy and

18. The Court has taken into consideration the fact that bankruptcy is but just one of eight categories of paralegal services offered by USPS in its *Yellow Pages'* ad. USPS provides other services in the area of contracts, corporations, divorce, immigration, probate, small claims and trust/wills.

state cases dealing with similar, if not identical, situations.

Filippone attempted to justify his practices by arguing that none of the debtors had complained about his services and that there is no evidence of negligence adduced against him.[19] Regardless of the accuracy of the Filippones' advice, or the lack of complaints, a debtor who files a bankruptcy petition acting pursuant to advice rendered by one unqualified to practice law, runs the risk of suffering grave and injurious consequences.

There is no reason to think that Filippone will drop the reference to bankruptcy in the USPS *Yellow Pages* advertisement or cease the unauthorized practice of law unless enjoined, as required by § 110(j)(2)(A)(ii). However, the Court will follow the method of injunctive relief utilized in *Gavin*, 181 B.R. at 814 (Bankr.E.D.Pa.1995) by allowing USPS to obtain permission to assist debtors in filing bankruptcy cases in this jurisdiction by paying all sums directed under order of this Court, by deleting reference to bankruptcy in its *Yellow Pages* advertisement and thereafter petitioning this Court and obtaining express permission to resume his practice as a bankruptcy petition preparer.

## CONCLUSION

The total amount of sanctions imposed against Filippone for violations of § 110 are $6,500.00. This amount shall be payable to Barry K. Lander, Clerk of the Court, United States Bankruptcy Court, 325 West "F" Street, San Diego, CA, 92101, for deposit into the United States treasury within thirty (30) days of the entry of the order in these cases. These monetary sanctions are in addition to the disgorgement of all fees collected from the debtors (with the exception of Henry) in these cases and the injunction as outlined above.

In addition, the Court will certify to the district court the intentional failure of the Filippones to disclose all fees paid by the debtors under penalty of perjury. The Court recommends that Filippone be assessed $12,-

000.00 and Filippone II be assessed $10,-000.00 for their unfair and deceptive act.

Although the sanctions in these cases may appear harsh, the Court is particularly bothered by the Filippones' blatant disregard and disrespect for the law. Apparently feeling they were "above the law," the Filippones continued on a course of conduct that was willful and intentional despite being put on notice by the UST's office and given ample opportunity to correct the violations.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. The UST is directed to file with this Court an order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.

---

**19.** Filippone obviously has forgotten the testimony of Hansen regarding her displeasure over being guided into a Chapter 7 which she later had to dismiss in response to the UST's § 707(b) motion.