In re Camille BRADSHAW, Debtor.

Patricia A. Staiano, United States Trustee, Region of New Jersey, Pennsylvania and Delaware, Plaintiff,

v.

The File Aid of New Jersey, Central Jersey Filing Center, the Filing Center of New Jersey, Atlantic County Filing Services, Shaun Heussen, Joseph Way, Eliud Chaparro, Fran Serino, Anne Harrington, Tammy J. Lisi and Dianne L. Zmijewski, Defendants.

Bankruptcy No. 97–21361 (NLW).
Adversary No. 98–2257(NLW).

United States Bankruptcy Court,
D. New Jersey.

April 26, 1999.

---

Faith S. Hochberg, United States Attorney, Newark, NJ, By Michael A. Chagares, Director, Affirmative Civil Enforcement Unit.

Shaun Heussen, Cranford, NJ, pro se.

Fran Serino, Kenilworth, NJ, pro se.

## OPINION

NOVALYN L. WINFIELD,
Bankruptcy Judge.

Plaintiff filed this adversary action alleging that the defendant bankruptcy petition preparers conducted a large scale fraudulent, unfair and deceptive scheme which targeted New Jersey citizens who can ill afford to be victimized by the defendants. These citizens were largely lower-income people who live in New Jersey's more urban areas and who have little or no knowledge about bankruptcy law or procedure.

By this action, filed under 11 U.S.C. § 110, Plaintiff seeks injunctive relief to stop defendants from continuing their fraudulent, unfair and deceptive scheme, a judgment requiring defendants to disgorge the fees paid by those victimized by the defendants and fines pursuant to section 110.

The matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and the court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

### PROCEDURAL HISTORY

Plaintiff filed this lawsuit on April 22, 1998. On the same date, the Court granted plaintiff's application for an Order to Show Cause With Temporary Restraining Order and Order for Expedited Discovery. The temporary restraints prohibited defendants from directly or indirectly preparing or assisting in the preparation of any bankruptcy petitions. On April 28, 1998, the Court granted plaintiff's application for an Order extending the temporary restraints until the date of the hearing on

plaintiff's application for a preliminary injunction.

The Court held a preliminary injunction hearing at which plaintiff called witnesses, including several of defendants' customers, and at which the Court received several documents into evidence. Based upon the evidence presented, the Court granted plaintiff's application and issued a Preliminary Injunction which prohibited defendants from directly or indirectly preparing or assisting in the preparation of any bankruptcy petitions.

Prior to the trial of this case, defendants Joseph Way, Anne Harrington, Tammy J. Lisi and Atlantic County Filing Center entered into consent orders with the plaintiff. Each consent order permanently enjoined the respective defendant from directly or indirectly preparing or assisting in the preparation of any bankruptcy petitions and required the respective defendant to pay monies to plaintiff, who, in turn, will attempt to reimburse defendants' victims.

Also prior to the trial of this case, the Court entered a default against defendant Eliud Chaparro. Hence, with respect to defendant Chaparro, the Court need only determine the appropriate scope of relief to be issued against him.

Defendant Zmijewski answered the Verified Complaint in this case. However, she thereafter failed to participate in discovery or appear at trial despite being provided with timely notice. At trial, plaintiff moved for entry of default against defendant Zmijewski, citing *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912 (3d Cir.1992). Although the Court agrees that entry of a default is appropriate against

defendant Zmijewski, the Court observes that considering the evidence of record pertaining to defendant Zmijewski, the final determination as to her liability is the same.[1]

The Court held a trial in this matter wherein plaintiff called additional witnesses, including several more of defendants' customers, and at which the Court received additional documentary evidence.[2] The Court found the testimony of each of defendants' customers to be both credible and compelling. The Court's conclusion as to their credibility was strengthened by the remarkable consistency in the description of their interactions with defendants. The Court similarly found plaintiff's other witnesses, including a former agent of the defendants (Anne Harrington), to be credible. In contrast, the Court found defendants Heussen and Serino were not credible witnesses. Their testimony was unsupported and largely self-serving. Thus, the court did not find it credible. Further, defendants did not call any of their former customers as witnesses.

### FINDINGS OF FACT

Defendants in this action fall into two groups. The first group is the unincorporated business entities which, through their respective employees, agents or representatives, have been involved in the business of preparing bankruptcy petitions. These business entities are The File Aid of New Jersey (hereinafter "File Aid"), Central Jersey Filing Center and The Filing Center of New Jersey (hereinafter "The Filing Center").[3]

---

1. In light of the disposition of this case as to defendants Way, Lisi, Harrington, Atlantic County Filing Services and Chaparro, the term "defendants", unless otherwise noted, shall describe only defendants Heussen, Serino, Zmijewski, the File Aid of New Jersey, Central Jersey Filing Center and the Filing Center of New Jersey.

2. Pursuant to Fed. R. Bankr.P. 7065 (Fed. R.Civ.P. 65(a)(2)), all evidence received and

testimony given at the preliminary injunction hearing is part of the trial record in this case.

3. File Aid (of Cranford) is the oldest of the business entity defendants and Central Jersey Filing Center (of Woodbridge) and The Filing Center (of Trenton) were created "[f]or some separation between areas. . . ." Trial Transcript ("Tr.") at 158.

The second group of defendants are individuals who have each performed services as bankruptcy petition preparers. Each of these defendants are or have been employees, agents and/or representatives of one or more of the business entity defendants and/or have been associated with one or more of the business entity defendants.

Defendant Heussen is an owner and/or manager of the defendant business entities. Tr. at 22 (Harrington testifies that Heussen was her boss at File Aid and Central Jersey Filing Center and that he was the owner); Exhibit T–8, Exhibit H at 30–31 (Heussen testifies that he runs File Aid); Exhibit T–17 (tape of person answering phone at File Aid stating "Shawn [Heussen] is my boss.").

None of the individual defendants is an attorney or a paralegal. Tr. at 157, 158, 163, 207–08.

Defendants purchased from the Superior Court of New Jersey lists of the names and addresses of persons against whom eviction actions have been brought in New Jersey's landlord/tenant courts. Tr. at 158; Exhibit T–8, Exhibit H at 8.

Defendants then mailed solicitations bearing the name of one of the business entity defendants to persons appearing on the lists purchased from the Superior Court of New Jersey. Tr. at 158. *See* Tr. at 4, 43, 66, 89; Preliminary Injunction Hearing Transcript ("PI") at 5, 32, 40 (customers testifying that they were subject to eviction actions when they received defendants' solicitations).

Defendants' sole avenue for advertising was through its direct-mail solicitations. Tr. at 159, 164.

These solicitations generally consist of at least two pages and include the items set forth below. *See, e.g.,* Exhibits T–1, T–2, T–2A, T–3, T–4, T–5, T–14 (solicitations prepared and sent by defendants).

The front page of the solicitations stated "Notice has been served upon you by:" "THE SUPERIOR COURT OF NEW JERSEY". *Id.* This page further notified the recipient that he or she might be evicted and that the recipient would soon be receiving a letter from the court advising him/her of a court date. *Id.* It also stated that the defendant business entity might be able to help the recipient facing an eviction action. *Id.*

Such solicitations were obviously designed to lead the recipient to believe that the defendant business entity sending the solicitation was connected to the court system and/or that defendant business was a state agency that offers assistance to persons in difficult financial circumstances. Thus, such solicitations were fraudulent, unfair and deceptive. Indeed, each customer of defendants' who testified was so misled. Tr. at 5, 44 (upon receiving the solicitation "I believed that the File Aid was some sort of State or Government program to help people that were getting evicted. . . ."), 91; PI at 6 (upon receiving the solicitation, customer thought " 'Okay, they [are] working for the state, they can help me being that this is from the Superior Court of New Jersey.' "), 14, 37 (customer solicitation "was from the New Jersey Court."), 42 (upon receiving the letter from defendants, "I opened it up and read it, it seemed like it was from an agency in the Government, you know, New Jersey.") *See* Exhibit T–8 at 120 ("I regrettably hired 'File Aid of NJ to assist me in what (sic) represented to so as a 'Government program to help tenants in danger of eviction to keep their apartments', as evidenced by attached documents"), 121 (" 'File Aid of NJ' represented to me that they were affiliates of the Court. . . ."); Exhibit T–9, Exhibit I at 3 (customer learned about File Aid because she "received a Notice from Landlord Tenant Court and a flyer from File Aid of New Jersey was in it."), 19 (customer learned about defendants because "I received information in the mail from legal services of N.J.").

At or toward the top of the second page of the solicitations the caption "EVICTION NOTICE INFORMATION" appeared in large, bold letters. *See, e.g.,* Exhibits T–1, T–2, T–2A, T–3, T–4, T–5, T–14. This page stated, for example, that the defendant business entity could provide the recipient "WITH LEGAL OPTIONS YOU MAY NOT BE AWARE OF." *See, e.g.,* Exhibit T–1. The Second page also stated that by allowing the defendant business entity to "help you file your forms", the recipient could stay in his or her "apartment or home for up to 6 months or longer", regardless of whether the recipient is able to pay his or her rent. *See, e.g.,* Exhibits T–1, T–2.

Further, the second page of the solicitations offered to erase all of the recipient's debts. *See, e.g.,* Exhibits T–3, T–4, T–5, T–14.

The second page of the solicitations is fraudulent, unfair and deceptive in several respects. For example, by offering to provide the recipient with their "legal options" the recipient was led to believe that he/she will be assisted by an attorney. *See, e.g.,* Tr. at 91–92; PI at 46. None of the defendants, however, are attorneys.

The second page of the solicitations is also fraudulent, unfair and deceptive in that it was intended to lead the recipients to believe that they would be able to stay in their apartment or home for six months or longer if they accepted the defendant business entity's offer of assistance. Such a guarantee simply has no legal basis. Indeed, the individual defendants admitted the falsity of this representation. *See, e.g.,* Tr. at 161 (Heussen), 167 (Serino), 212 (Zmijewski).

The second page of the solicitations is additionally fraudulent, unfair and deceptive in that it led the recipients to believe that all of their debts would be erased if they accept the defendants' offer of assistance. Such a guarantee has no legal basis. Indeed, a bankruptcy simply cannot discharge all types of debts. *See, e.g.,* 11 U.S.C. § 523 (Exceptions to Discharge).

Significantly, the individual defendants admitted the falsity of this representation. *See, e.g.,* Tr. at 162 (Heussen), 167–68 (Serino), 213 (Zmijewski).

Defendants continually engaged in fraudulent, unfair and deceptive conduct by failing to disclose that their services concerned preparing bankruptcy petitions. A former agent of defendants explained that defendant Heussen instructed her to avoid using the term "bankruptcy" because it would "scare" the customers. Tr. at 24. In fact, several of the solicitations that the defendants distributed do not even mention the word bankruptcy. *See, e.g.,* Exhibits T–1, T–2, T–2A. *See also,* Tr. at 68–69 ("[Heussen] really didn't tell me nothing about bankruptcy. He just said he could get me out of eviction and there wouldn't be no hassle doing it."), 91; PI at 43 (defendant Serino discussed "chapters. I never heard the word 'bankruptcy.'"), 46 ("I did not know it was bankruptcy at first."); Exhibit T–8 at 120 ("This 'program' was not presented as *bankruptcy* by 'File Aid of New Jersey'. . . .")(emphasis in original).

The Court is convinced that defendants' goal was to induce as many people as possible to file bankruptcy petitions, solely to maximize the fees they could collect. As succinctly stated by defendants' former agent, "Well, basically, the idea was to get the money. The idea was to get as much money as you possibly could . . . regardless of the circumstances of the client." Tr. at 23. Defendants continually recommended filing bankruptcy petitions despite the fact that such filings were often inappropriate. *See generally* Exhibit T–8, Exhibit B at 6 (Chief Judge Gambardella concludes in *In re Johnson,* No. 96–40886(RG), "It is clear . . . after reviewing this matter that this bankruptcy was not in the interest of the Debtor.")

For instance, defendants recommended bankruptcy filings to persons whose assets exceed their debts and to persons with low levels of debt. *See, e.g.,* Exhibit

T–8 at 258 (liabilities $4736.73, assets $3492)(Heussen/File Aid), 421 (liabilities $3493.11, assets $1370)(Heussen/File Aid), 777 (liabilities $5279.98, assets $2300)(Zmijewski/Central Jersey Filing Center), 1056 (liabilities $4256.97)(Serino/Central Jersey Filing Center), 1218 (liabilities $4090.45, assets $15,181)(Serino/Central Jersey Filing Center), 1331 (liabilities $2993.79, assets $1445)(Heussen/File Aid), 1379 (liabilities $4901.06, assets $1150)(Zmijewski/Central Jersey Filing Center), 1859 (liabilities $3769)(Heussen/File Aid), 2406 (liabilities $4916, assets $23,290)(Zmijewski/Central Jersey Filing Center), 2444 (liabilities $3934.69, assets $2000)(Serino/File Aid), 2487 (liabilities $3079.85, assets $2300)(Serino/The Filing Center), 2525 (liabilities $3853.98, assets $1900)(Heussen/File Aid).[4]

Defendants also continually engaged in fraudulent, unfair and deceptive conduct insofar as they gave legal advice to their customers despite the fact that none of the defendants is an attorney.

The following, are examples of the types of legal advice defendants rendered to their clients. For instance, defendants admitted that they explained the differences between Chapters 7 and 13 to their customers. Tr. at 159–60 (Heussen), 165 (Serino), 210 (Zmijewski).

Defendants advised as to which Chapter a customer should file. *See, e.g.*, PI at 8; Exhibit T–9, Exhibit I at 7 (Heussen/File Aid "advise[d] as to which chapter to file . . . ."), 11 ("A young lady came to my apartment from the File Aid Program & explained in detail about bankruptcy . . . ."), 23 (service by File Aid was an "Explanation of Chapter 7 . . . ."), 25 (The Filing Center "Explained what bankruptcy was [,] the process and what best suited our needs.").

Defendants further admitted that they defined legal terms for their customers, such as what secured and unsecured claims were. Tr. at 160 (Heussen), 166 (Serino), 210 (Zmijewski).

Defendants advised their customers, consistent with the mailed solicitations, that the purportedly positive effects of filing bankruptcy, included erasing all debts and preventing eviction. Tr. at 8–9, 45 (Heussen advised filing "would stop my eviction and I would start the slate off clean and it would pay my rent. And I would, you know, keep my apartment."), 68, 93, 95; PI at 6 (Serino advised " 'Your debts will be cleared out. You won't get evicted.' "), 7, 45; Exhibit T–9, Exhibit I at 5 (Heussen "explained to me that the Bankruptcy will [not damage] my credit as long as I pay the fees.").[5]

Through their solicitations and representations, defendants created the false impression that they were qualified to give legal advice. In fact, their customers believed that the defendants were attorneys or that they were associated with attorneys who would review their papers. *See* T–8, Exh. G at 2 (describing Central Jersey Filing Center, debtor states "they're to have been lawyers."); T–9, Exh. I at 9 (in explaining the service File Aid performed for her, debtor states "The lawyer came to my house and help."). Defendants have even advised clients that it was unnecessary to appear in court, at times, advising their clients that they (defendants) would appear. Tr. at 68–69; PI at 44; Exh. T–8 at 121 (File Aid "represented that should

---

4. The Court has dismissed many bankruptcy petitions prepared by the defendants because the debtors could not afford to pay or otherwise did not pay the bankruptcy court the filing fees that were due. *See, e.g.*, Exhibit T–8 at 1077, 1250, 1395–96.

5. One interesting piece of evidence in this case is the transcript of monitored telephone conversation between defendant Serino and debtor Camille Bradshaw. *See* Exhibit T–17. In that conversation, Serino advised the debtor about Chapter 13 bankruptcy cases and the purported ramifications of a Chapter 13 filing. For instance, she advised that in a Chapter 13 case there is no chance of eviction whereas in a Chapter 7 case there is a "1% to 3% chance."

any problems arise, they would accompany their clients to court."), 1569 (File Aid "informed me ... that my presence in court was not necessary and they would speak to the Judge...").

Further, it is clear that it was the defendants and not the clients who decided how the clients' financial information was entered on the petition and schedules. *See, e.g.,* Tr. at 8 ("I didn't have any input as to which figures went on what pages...."); PI at 10 ("I had no input. The only thing is I just received it. Everything was already done for me. I didn't have to do anything."); T–8, Exh. H at 13 (defendant Heussen testifies that they classified the debts and "then fill it in the proper places."), 14 (defendant Heussen testifies that they make the decision where the debts are listed, noting "That's what a petition preparer is supposed to do."). Defendants also determined which exemptions would be claimed and provided the statutory citation for the claimed exemption. Tr. at 160–61, 165, 211–12 (answering question "who decides which property is claimed as exempt", defendant Zmijewski responds "I guess it would be me."); PI at 83. In addition, at least one client testified that a defendant added items to her papers that the defendant knew were not true. *See, e.g.,* Tr. at 10 (false babysitting job added), 20 (preparer made up values for clothing and jewelry).

Defendants have further engaged in the unauthorized practice of law by preparing, on behalf of their clients, motions, such as Applications to Pay Filing Fees in Installments[6], and other documents which seek court orders, such as Reaffirmation Agreements. *See, e.g.,* Exhibit T–8 at 1037, 1038 (Reaffirmation Agreements), 2376 (Motion to Reinstate Case), 2426 (Reaffirmation Agreement), 2436 (Reaffirmation Agree-

ment), 2458 (Reaffirmation Agreement), 2481 (Emergency Motion to Reopen Case), 2607 (Reaffirmation Agreement), 2634, 2636 (Reaffirmation Agreement, Motion to Convert Case), 2689 (Reaffirmation Agreement). Further, defendants prepared Chapter 13 plans and Summaries of Chapter 13 plans. *See, e.g.,* T–8 at 2429 (Chapter 13 Summary), 2434–35 (Chapter 13 plan, Summary of Chapter 13 plan), 2493 (Chapter 13 plan), 2553 (Chapter 13 plan), 2570 (Summary of Chapter 13 plan), 2637 (Summary of Chapter 13 plan), 2690 (Summary of Chapter 13 plan).

The Application to Pay Filing Fees in Installments obligates the applicant to certify that "I have not paid any money or transferred any property to an attorney *or any other person* for services in connection with this case". (emphasis added). *See, e.g.,* T–8 at 128, 884, 904, 983, 1247. Defendants certainly qualify as such "other person" for purposes of this case. This is so because the defendants have been paid money for services in connection with bankruptcy cases in which such applications were filed.

Defendants also engaged in fraudulent, unfair and deceptive conduct by failing to provide their customers with the documents necessary to continue their cases. The Court observes that in almost every instance defendants provided their customers with incomplete petitions for filing with the Court, despite being warned about this practice by the Court. *See, e.g.,* Tr. at 163, 213; T–8 at 2404.[7]

With dismaying regularity the Court has been forced to dismiss cases because defendants failed to provide their clients with schedules and statements to file, in violation of Fed. R. Bank. P. 1007. *See, e.g.,* T–8 at 15 (Zmijewski/Central Jersey Fil-

---

**6.** The record is rife with examples of Applications to Pay Fees in Installments. Indeed, it appears that defendants routinely prepared such an application for each of their customers.

**7.** The Court has been required to issue a Notice that a hearing will be held to determine whether the petition should be dismissed for failure to file the required schedules and statements at the appropriate time in nearly every case of which the Court is aware in which the defendants prepared documents.

ing Center), 59 (Zmijewski/Central Jersey Filing Center), 66 (Serino/The Filing Center), 73 (Heussen/File Aid), 79 (Serino/Central Jersey Filing Center), 85–86 (Heussen/File Aid), 170 (Heussen/File Aid), 250 (Zmijewski/Central Jersey Filing Center), 724 (Zmijewski/Central Jersey Filing Center), 886 (Heussen/File Aid), 1281–82 (Zmijewski/Central Jersey Filing Center), 1373 (Heussen/File Aid), 1738 (Heussen/File Aid), 1890 (Zmijewski/Central Jersey Filing Center), 1898 (Serino/The Filing Central), 1917 (Heussen/File Aid), 2382–83 (Zmijewski), 2396–97 (Serino/Central Jersey Filing Center), 2451–52 (Zmijewski/Central Jersey Filing Center), 2465 (Heussen/File Aid), 2512–13 (Serino/File Aid), 2518–19 (Serino/The Filing Center), 2548–49 (Zmijewski/Central Jersey Filing Center), 2559–60 (Serino/Central Jersey Filing Center), 2581 (Heussen/File Aid), 2593 (Serino/Filing Center of New Jersey), 2615 (Heussen/File Aid), 2619 (Heussen/File Aid), 2642 (Heussen/File Aid), 2648–49 (Heussen/File Aid), 2674–75 (Zmijewski/Central Jersey Filing Center), 2682–83 (Zmijewski/Central Jersey Filing Center), 2696 (Heussen/File Aid), 2702 (Heussen/File Aid), 2714 (Zmijewski/Central Jersey Filing Center), 2720 (Heussen/File Aid), 2729–32 (Serino/Central Jersey Filing Center), 2740 (Zmijewski/Central Jersey Filing Center), 2781 (Serino/The Filing Center), 2787 (Zmijewski/Central Jersey Filing Center), 2796–97 (Zmijewski/Central Jersey Filing Center).

The law is clear that petition preparers may only charge a fee for typing services. Perhaps the most egregious instances of defendants' continual fraudulent, unfair and deceptive conduct involve the many cases dismissed for failure to file schedules and statements where the only papers filed were *handwritten* or partly handwritten. *See, e.g.*, T–8 at 626–29, 631, 901–04, 906, 980–83, 985, 1356–59, 1361, 1584, 1950–53, 1955, 1937–39, 1941.

Defendants continually engaged in fraudulent, unfair and deceptive conduct insofar as they were unavailable to assist their clients after the client paid his or her fee.[8] *See, e.g.*, Tr. at 48, 99–100; Exhibit T–8 at 1907 (letter from debtor citing inability to contact defendant Serino), 1565 (letter from debtor to Court stating "I filed my case through the File Aid of New Jersey, and since the filing, I can't even get a return phone call from their office."). Indeed, one exasperated debtor reported to the Court:

> I hired them. I paid them a fee. I paid the filing fees for the Court, and its like you're out of the picture as soon as they did the first part.

*See* T–8, Exh. G at 5.

The Court notes that defendants persisted in their conduct despite being notified (actually or constructively) by the courts of the limitations on their activities under section 110 and despite the fact that they were admonished about the way they conducted their business. *See, e.g.*, T–8, Exh. A at 14 (Judge Tuohey questions File Aid's business operations and practices and advises "hopefully you might have heard some of the things I've said today and maybe you'll change the way you're operating."), Exh. D at 13 (Judge Gambardella reminds Heussen "the only legitimate services performed by the petition preparer is the actual typing of the petition."), Exh. E at 21 (Judge Tuohey reminds counsel for File Aid "I view [section] 110 of the code to allow a typing service and nothing more."), Exh. F at 8 (Judge Tuohey admonishes "I really think you're masquerading that you're helping people and in reality you're hurting people real bad ... you hurt a lot of people on welfare, you hurt a lot of single mothers raising families, what you're doing is despicable.").

The Court is unable to determine the precise number of bankruptcy petitions that defendants prepared. However, the

---

**8.** The ability of defendants' customers to communicate with them after they had paid their fees to defendants was not helped by the fact that two of defendants' three business locations were Mail Boxes, Etc. addresses. Tr. at 209–10.

Court can quantify the following numbers. Defendant Heussen prepared at least 137 bankruptcy petitions. Exh. T–20 (listing 122 customers); Exh. T–15 (additional 11 customers—Robin Branch, Izelle Brown, Michael Cohen, Carla Davis, Cynthia Humphrey, Faith Jackson, Veronda McKenzie, Maria Moore, Jacqueline Pierrelouis, Colleen Skakel and Coraleen Williams); T–8 at 276 (customer Yvonne Brown), 2054–58 (customer Sandra Griffin), 2219–23 (customer Stan Mims), 2304–08 (customer Dasie Thornton).

Defendant Serino prepared at least 76 bankruptcy petitions. T–18 (listing 70 customers); T–16 (additional 6 customers—Mafeesah Battle, Cynthia DeSantis, Joao Gigante, Robert & Sherria Langston, Gregory & Debra Lilly, Catherine McDonald).

Defendant Zmijewski prepared at least 175 bankruptcy petitions. T–19 (listing 167 customers); T–8 at 10–15 (customer Salmisha Anderson), 293–97 (customer Betty Burke), 1885–90 (customer Sherry Wallace), 2543–50 (customer Patricia Moran), 2594–99 (customer Rudolph Perrine), 2660–63 (customer Harvey Sullivan), 2669–76 (customer Evelyn Underwood), 2782–89 (customer Christopher Hankins).

Defendant Chaparro prepared at least 103 bankruptcy petitions. T–21 (listing 84 customers); T–8 at 804–36 (customer Timothy Hopkins), 837–72 (customer Erika Horling), 1164–99 (customer Gail Mitchell), 1785–1818 (customer Mary Toney), 2039–43 (customer Camille Bradshaw), 2074–78 (customer Andrea Carmichael), 2989–93 (customer Gamal Cheatham), 2014–18 (customer Tamara Coleman), 2079–83 (customer Timothy Hopkins), 2084–88 (customer Rhea Howard), 2089–93 (customer Ifeanyi Ike), 2094–98 (customer Esther Jackson), 2174–78 (customer Darnell Lee), 2209–13 (customer Michelle Meacham), 2216–18 (customer Barbara Mills), 2224–28 (customer Stella Mingo), 2274–78 (customer Ivannska Roig), 2299–2303 (customer Barbara Sykes), 2349–53 (customer Margaret Weil).

Defendants also failed to identify themselves as petition preparers as required by Section 110. Each of the defendants prepared various documents for filing on which they failed to sign and/or print their names and addresses.

Defendant Heussen prepared at least 37 documents for filing and failed to sign and/or print his name and address on such documents without any reasonable cause. *See, e.g.,* T–8 at 71, 83, 128, 168, 254, 407, 884, 897, 899, 904, 983, 1036, 1037, 1038, 1129, 1132, 1247, 1248, 1371, 1639, 1736, 1873, 1915, 1953, 2456, 2462, 2523, 2577, 2601, 2602, 2613, 2623, 2641, 2646, 2703, 2708, 2718.

Defendant Serino prepared at least 27 documents for filing and failed to sign and/or print her name and address on such documents without any reasonable cause. *See, e.g.,* T–8 at 63, 77, 629, 876, 1052, 1054, 1095, 1214, 1359, 1582, 1829, 1894, 2394, 2434, 2435, 2436, 2485, 2510, 2516, 2553, 2557, 2687, 2689, 2690, 2722, 2728, 2778.

Defendant Zmijewski prepared at least 15 documents for filing and failed to sign and/or print her name and address on such documents without any reasonable cause. *See, e.g.,* T–8 at 294, 296, 2376, 2426, 2429, 2467, 2469, 2481, 2493, 2570, 2599, 2634, 2636, 2637, 2661.

Defendant Chaparro prepared at least 26 documents for filing and failed to sign and/or print his name and address on such documents without any reasonable cause. *See, e.g.,* T–8 at 110, 112, 113, 176, 309, 348, 401, 494, 496, 497, 598, 599, 625, 689, 807, 808, 840, 1167, 1451, 1452, 1483, 1742, 1750, 1788, 1789, 1816.

In addition, without any reasonable cause, defendants prepared various documents for filing on which they failed to supply their social security numbers.

Defendant Heussen prepared at least 30 documents for filing and failed to supply on such documents his social security number, without any reasonable cause. *See, e.g.,* T–8 at 71, 83, 126, 128, 168, 254, 407,

884, 899, 904, 983, 1037, 1038, 1132, 1247, 1248, 1371, 1639, 1736, 1915, 1953, 2456, 2462, 2523, 2577, 2602, 2613, 2623, 2641, 2646. Indeed, defendant Heussen utilized a fictitious social security number on a document filed with the Court on at least one occasion. *See, e.g.,* T–8 at 126.

Defendant Serino prepared at least 24 documents for filing and failed to supply on such documents her social security number without any reasonable cause. *See, e.g.,* T–8 at 63, 77, 629, 876, 1054, 1095, 1214, 1359, 1582, 1829, 1894, 2394, 2434, 2485, 2510, 2516, 2553, 2557, 2687, 2689, 2690, 2722, 2728, 2778.

Defendant Zmijewski prepared at least 9 documents for filing and failed to supply on such documents her social security number without any reasonable cause. *See, e.g.,* T–8 at 2376, 2426, 2429, 2481, 2493, 2570, 2634, 2636, 2637.

Defendant Chaparro prepared at least 24 documents for filing and failed to supply on such documents his social security number without any reasonable cause. *See, e.g.,* T–8 at 110, 112, 113, 176, 309, 348, 401, 494, 496, 497, 598, 599, 625, 689, 807, 808, 840, 1167, 1483, 1742, 1750, 1788, 1789, 1816.

Defendants repeatedly failed to file, within ten days after a petition was filed, (or at all) a declaration under penalty of perjury disclosing fees they received from their customers. *See, e.g., In re Frazier,* 97–29405(NLW)(Serino/Central Jersey Filing Center); *In re Howard,* 96–29381(NLW)(Heussen/File Aid); *In re Johnson,* 97–52636(KCF)(Zmijewski/Central Jersey Filing Center); *In re McLeod,* 98–20330(WFT)(Serino/Filing Center of New Jersey); Exhibit T–8 at 297 (Zmijewski/Central Jersey Filing Center), 1131 (Heussen/File Aid). Indeed, there are over 90 motions citing defendants' other violations of this subsection pending before the Court. The Court has adjudged certain defendants in violation of this requirement in the past. *See, e.g.,* T–8 at 1968–2003 (Court Orders).

It is undisputed that defendants' standard charge for preparation of bankruptcy petitions was $300. Tr. at 138, 149, 166, 208; T–8 (Volume I, Exh. A) at 10 ("We always charge $300. That is our fee, always. There are no exceptions."), 297, 775, 801, 830–31, 864–65, 1192–93, 1812, 2428, 2635, 2747; T–15 (disclosure statements by Heussen all indicating $300 charge); T–16 (disclosure statements by Serino indicating $300 charge).

Courts in this district have, in numerous instances, recognized that defendants' $300 fee is excessive and have required defendants to repay the amount they collected in excess of the value of their services. *See, e.g.,* T–8 at 1968–2003. Indeed, defendants have repaid several of their customers at the Court's behest. *See, e.g.,* T–9 (Exh. J). Nonetheless, defendants intentionally and continually charged excessive fees for their services. Tr. at 161.

The Court finds that defendants' services had absolutely no value. As detailed above, defendants' customers were victimized by defendants' fraudulent, unfair and deceptive actions. Defendants' clients sojourn into the bankruptcy system was consistently short and fruitless.

It should be noted that nothing in the record demonstrates that defendants' "services" had any value whatsoever to any of their clients. Indeed, if anything, the value of defendants' services was a negative. Innocent people relied upon defendants' empty promises to their detriment.

### CONCLUSIONS OF LAW

In the present case, plaintiff seeks permanent injunctive relief against defendants pursuant to section 110(j), disgorgement of defendants' fees and fines for violations of section 110.

■ Section 110 was intended to protect consumers from abuses by non-lawyer bankruptcy petition preparers. In enacting section 110, Congress sought to confront petition preparers "who prey on the poor and unsophisticated", who "attempt

to provide legal advice and legal services" and/or who "take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system." 140 Cong. Rec. S14597–02 (daily ed. Oct. 7, 1994). These statements aptly describe defendants' actions. Section 110 also makes clear that bankruptcy petition preparers may *only* provide typing services to their customers and sets forth very specific requirements to be followed by petition preparers. H.R.Rep. No. 835, 103d Cong., 2d Sess. 56 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3365. Section 110 further provides that injunctive relief as well as damages, fines and other relief may be assessed against bankruptcy petition preparers who, *inter alia*, violate the requirements of sections 110 or engage in fraudulent, unfair or deceptive conduct.

Under section 110(a)(1) a bankruptcy petition preparer is defined as "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing" in a bankruptcy case. It is undisputed that prior to being enjoined by this Court, defendants were bankruptcy petition preparers within the meaning of section 110.

■ A "document for filing" for purposes of section 110 is defined by 11 U.S.C. § 110(a)(2) as "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title." This Court agrees with the case authority which holds that petitions, plans, schedules, statements, certifications, motions and other documents filed in bankruptcy cases are each a separate "document for filing" for purposes of section 110. *See, e.g., In re Williams,* 216 B.R. 600, 602 (Bankr. S.D.Tex.1997); *In re Hobbs,* 213 B.R. 207, 212–13 (Bankr.D.Me.1997); *In re Hartman,* 208 B.R. 768, 777 (Bankr.D.Mass. 1997); *In re Jackson,* 205 B.R. 344, 345 (Bankr.S.D.Fla.1997); *In re Paskel,* 201 B.R. 511, 516 (Bankr.E.D.Ark.1996).

## INJUNCTIVE RELIEF UNDER SECTION 110(j)

### A. Governing Standards

■ When permanent injunctive relief is sought pursuant to statutory authority, courts typically consider only two factors: (1) whether there is an actual violation of the statute, and (2) whether there is a likelihood of future violations. *See, e.g., Commodity Futures Trading Comm'n v. Hunt,* 591 F.2d 1211, 1220 (7th Cir.1979); *United States v. Toys "R" Us, Inc.,* 754 F.Supp. 1050, 1053 (D.N.J.1991); *United States v. Medina,* 718 F.Supp. 928, 930 (S.D.Fla.1989). Hence, no showing of irreparable harm is necessary in an action for a statutory injunction. *Government of V.I. v. Virgin Islands Paving, Inc.,* 714 F.2d 283, 286 (3d Cir.1983); *United States v. Spectro Foods Corp.,* 544 F.2d 1175, 1181 (3d Cir.1976); *United States v. Cappetto,* 502 F.2d 1351, 1358–59 (7th Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975). The traditional test is not applied because where "Congress has seen fit to act in a given area by enacting a statute, irreparable injury must be presumed in a statutory enforcement action." *United States v. Richlyn Laboratories, Inc.,* 827 F.Supp. 1145, 1150 (E.D.Pa.1992). Further, an examination of whether an injunction pursuant to a statute is in the public interest is unnecessary because Congress acts in the public's interest. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 803 (3d Cir.1989); *United States v. Diapulse Corp. of Am.,* 457 F.2d 25, 28 (2d Cir. 1972); *United States v. Roach,* 947 F.Supp. 872, 877 (E.D.Pa.1996).

### B. The Standards Applied

#### Conduct in Violation of Section 110

■ Section 110(j) permits the Court to issue an injunction barring a person from acting as a bankruptcy petition preparer when (1) the petition preparer has "continually engaged" in conduct in violation of section 110 or has "engaged in any other

fraudulent, unfair or deceptive conduct" and (2) "an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with proper administration of this title."

Defendants have continually engaged in conduct which violated section 110. Indeed, they *flouted* the requirements of section 110 in several respects.

For instance, they continually prepared documents for filing and failed to sign and/or print their names and addresses on such documents, in violation of 11 U.S.C. § 110(b)(1) without any reasonable cause.[9] Indeed, as set forth in more detail below, defendant Heussen violated section 110(b)(1) at least 37 times, defendant Serino at least 27 times, defendant Zmijewski at least 15 times and defendant Chaparro at least 26 times.

Defendants also continually prepared documents for filing and failed to include on the documents their social security numbers, in violation of 11 U.S.C. § 110(c) without any reasonable cause.[10] Indeed, as set forth in more detail below, defendant Heussen violated section 110(c) at least 30 times, defendant Serino at least 24 times, defendant Zmijewski at least 9 times and defendant Chaparro at least 24 times. In fact, at least one defendant utilized a fictitious social security number.

Defendants have used the word "legal" in their advertisements, in violation of 11 U.S.C. 110(f)(1).[11] For instance, one advertisement distributed by defendants stated in large letters: "WE CAN PROVIDE YOU WITH *LEGAL* OPTIONS YOU MAY NOT BE AWARE OF." Exhibit T–1 (emphasis added).

In addition, in violation of 11 U.S.C. § 110(h)(1),[12] defendants repeatedly failed to timely file (or file at all) a declaration under penalty of perjury disclosing fees they received from debtors. Indeed, in addition to the overwhelming evidence of violations by the defendants that were presented in this matter, over 90 motions have been filed in this district citing defendants' other violations of section 110(h).

Finally, in violation of 11 U.S.C. § 110(h)(2), defendants knowingly charged debtors fees in excess of the value of services rendered for the documents prepared. Defendants' standard charge for their services is $300. Courts, including this Court, have determined that $50 is generally the reasonable charge for a bankruptcy petition preparer's services. As detailed above, Courts in the district have, in numerous instances, recognized that defendants' $300 fee is excessive and have required defendants to repay the amount they collected in excess of the value of their services. Despite these court rulings, defendants continued to charge excessive fees for their services. Accordingly, the Court holds that defendants have continually engaged in conduct which violates section 110.

*Conduct Which Is Fraudulent, Unfair and Deceptive*

The direct mail solicitations sent by the defendants are clearly fraudulent, unfair and deceptive in the following respects:

---

**9.** Section 110(b)(1) requires that "[a] bankruptcy petition preparer who prepares a document for filing shall sign the document and print on the document the preparer's name and address."

**10.** Section 110(c) requires that "[a] bankruptcy petition preparer who prepares a document for filing shall place on the document, after the preparer's signature, [the Social Security account number] that identifies individuals who prepared the document."

**11.** Section 110(f)(1) provides that "[a] bankruptcy petition preparer shall not use the word 'legal' or any similar term in any advertisements...."

**12.** Section 110(h)(1) provides that "[w]ithin 10 days after the date of the filing of a petition, a bankruptcy petition preparer shall file a declaration under penalty of perjury disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to debtor."

- The recipient of the solicitation was led to believe that the defendant sending the solicitation was connected to the court system and/or that defendant business was a state agency that offers assistance to persons in difficult financial circumstances. Indeed, each victim who testified before the Court was so misled.

- The defendants' solicitation deceived the recipient into believing that the defendants were qualified to provide legal advice. More specifically, the defendants' solicitation stated that it can provide the recipient "WITH LEGAL OPTIONS YOU MAY NOT BE AWARE OF."

- The recipient of the solicitation was also led to believe that he could remain living at his "apartment or home for up to 6 month or longer", regardless of whether the recipient was able to pay his rent. Not only does this guarantee not have any legal basis to it but the defendants themselves admitted that it was a false promise.

- The defendants' solicitation also led the recipient to believe that all of his debts will be erased. Such guarantee has no legal basis. The Bankruptcy Code does not discharge all types of debts. *See e.g.,* 11 U.S.C. § 523 (Exceptions to discharge). Significantly, the individual defendants admitted the falsity of this representation.

The defendants also engaged in continual acts of deception in that they deliberately did not disclose to their clients that bankruptcy petitions would be filed. In fact, several of the solicitations that the defendants distributed do not even mention the word bankruptcy. *See, e.g.,* Exhibits T–1, T–2, T–2A. The record before the Court indicates clearly that many of defendants' clients did not understand that the "solution" offered by defendants was a bankruptcy filing.

The defendants also repeatedly gave legal advice by, *inter alia,* advising which Chapter was appropriate, advising as to what exemptions to claim and preparing motions and other documents for filing with the court.

The defendants also continually engaged in fraudulent conduct by causing clients to execute and file false Applications to Pay Filing Fees in Installments ("Installment Applications"). The Installment Application obligates the applicant to certify that "I have not paid any money or transferred any property to an attorney *or any other person* for services in connection with this case". (emphasis added). Defendants plainly qualify as such "other person" for purposes of this case in that they have been paid money for services in connection with the bankruptcy cases. In fact, the record reveals that defendants received their fees either at, or immediately following the initial client contact. By inducing the clients to thereafter execute the Installment Applications defendants caused their clients to make false statements. Defendants thus acted in a fraudulent, unfair and deceptive manner with respect to both their clients and the Court.

The law is also clear that petition preparers may only charge a fee for typing services. Yet, defendants received $300 fees in many cases that were dismissed for failure to file schedules and statements, and where the only papers filed were *handwritten* or partly handwritten. Further, defendants continually deceived their clients by being unavailable to provide assistance after the clients paid their fees.

Accordingly, it is amply evident to the Court that defendants have continually engaged in many acts which are fraudulent, unfair and deceptive. Indeed, the Court is convinced that defendants never intended to offer legitimate petition preparation services. Rather, defendants' goal was to lure as many people as possible to file bankruptcy petitions thereby maximizing the fees they could collect. As succinctly stated by defendants' former agent, "Well, basically, the idea was to get the money. The idea was to get as much money as you

possibly could ... regardless of the circumstances of the client." Tr. at 23.

As a consequence of the above conduct, the Court finds that an injunction which simply prohibits defendants from violating the various provisions of section 110 is insufficient to prevent defendants' interference with the proper administration of Title 11. Defendants' misconduct is so varied and comprehensive in scope that only injunctive relief that bars defendants from acting as petition preparers will prevent further injury to an unsuspecting public and alleviate the burden on the bankruptcy court system.

The Court's conclusion that broad injunctive relief is warranted is further buttressed by the fact that defendants have persisted in their violations of section 110 despite being notified by the courts of the limitations on their conduct under section 110 and despite the fact that they have been admonished for their actions.

*Likelihood of Future Violations*

■■■ A determination of whether there is reasonable likelihood of future violations is based upon the totality of the circumstances. *CFTC v. American Metal Exch. Corp.*, 693 F.Supp. 168, 172 (D.N.J. 1988). Significantly, past misconduct is "highly suggestive of the likelihood of future violations." *SEC v. Management Dynamics*, 515 F.2d 801, 807 (2d Cir.1975). In particular, when the misconduct "has been founded on systematic wrongdoing rather than an isolated occurrence, a court should be more willing to enjoin [the defendant]." *Hunt*, 591 F.2d at 1220. Further, when the misconduct continues until an application for relief is filed "the likelihood of future violations, if not restrained, is clear." *CFTC v. British Am. Commodity Options Corp.*, 560 F.2d 135, 142 (2d Cir.1977), *cert. denied*, 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1147 (1978).

The continuity and gravity of the violations established by plaintiff demonstrates that defendants' activities are not limited occurrences but instead represent a systemic pattern of wrongdoing which will continue unless halted by the Court.

In sum, the Court holds that defendants continually engaged in conduct in violation of 11 U.S.C. § 110 and engaged in significant fraudulent, unfair and/or deceptive conduct. In addition, the Court holds that "an injunction prohibiting such conduct by defendants would not be sufficient to prevent interference with the proper administration of [Title 11 of the United States Code]." 11 U.S.C. § 110(j)(2)(B). Further, the Court holds that plaintiff has established that defendants will violate section 110 in the future unless the Court issues the requested relief under section 110(j). Accordingly, the Court will issue a permanent injunction prohibiting defendants from directly or indirectly acting as bankruptcy petition preparers in this jurisdiction and in any other jurisdiction in the United States.

### *DISGORGEMENT OF FEES*

■■■ The Court is required to order disgorgement of fees received by petition preparers which are "in excess of the value of services rendered for the documents prepared." 11 U.S.C. § 110(h)(2). Hence, the court must determine if defendants charged fees in excess of the value of services they rendered; and, if so, the amount each defendant must disgorge.

It is undisputed that defendants' standard charge for preparing bankruptcy petitions was $300. Tr. at 138, 149, 166, 208; Exhibit T–8 (Volume I, Exhibit A) at 10 ("We always charge $300. That is our fee, always. There are no exceptions."), 297, 775, 801, 830–31, 864–65, 1192–93, 1812, 2428, 2635, 2747; Exhibit T–15 (disclosure statements by Heussen all indicating $300 charge); Exhibit T–16 (disclosure statements by Serino indicating $300 charge).

The Court finds that defendants' services had absolutely no value. There is nothing in the record to demonstrate that defendants' "services" had any value whatsoever to any of their customers. Rather, defendants' clients were victimized by de-

fendants' fraudulent, unfair and deceptive actions, as was detailed above.

The Court's conclusion is buttressed by the fact that the Court has been repeatedly forced to dismiss cases prepared by defendants because the petitions were incomplete. Further, despite the requirement that petition preparers may only receive fees for their typing services, numerous petitions prepared by defendants were handwritten. Indeed, it is particularly disturbing to the Court that defendants extracted $300 fees for handwritten petitions which were subsequently dismissed because the petitions were incomplete.

Other courts have held that a petition preparer's services had no value in similar circumstances and required disgorgement of the full fee received by the preparer. *See, e.g., In re Williams,* 216 B.R. 600, 602 (Bankr.S.D.Tex.1997)(the preparer "failed to prove that adequate services were provided for [the fees paid]. The court concludes that the services of [the preparer] in connection with this case had no value."); *In re Paskel,* 201 B.R. 511, 518 (Bankr.E.D.Ark.1996) ("The value of [the preparer's] services are a negative compared to the monetary harm and distress he caused to this debtor."); *In re Brokenbrough,* 197 B.R. 839, 844 (Bankr.S.D.Ohio 1996)(full fee disgorged where besides filing a petition, "little else was accomplished"); *In re Murray,* 194 B.R. 651, 658–59 (Bankr.D.Ariz.1996); *In re Stacy,* 193 B.R. 31, 36 (Bankr.D.Or.1996)(full fee disgorged where petition "was dismissed because of [the preparer's] failure to file the remaining documents.").

As a result, the Court finds that the $300 fee received by defendants from each of their customers for defendants' services was clearly in excess of the value of the services rendered. The value of such services, as discussed above, was zero. Accordingly, pursuant to 11 U.S.C. § 110(h)(2), the Court shall order that defendants disgorge the sum of $300 for each petition that the defendants prepared.

■ Additionally, the defendants are required to disgorge fees because it is well established that courts may order the disgorgement of the fruits of illegal conduct. *See United States v. Ursery,* 518 U.S. 267, 284, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); *In re Kaitangian,* 218 B.R. 102, 115 (Bankr.S.D.Cal.1998); *In re Gavin,* 181 B.R. 814, 820–21, 823 (Bankr.E.D.Pa.), *adopted,* 184 B.R. 670 (E.D.Pa.1995).

■ The unauthorized practice of law is illegal in the State of New Jersey. *See* N.J. Stat. Ann. § 2C:21–22 (West 1995). The Court finds that the evidence establishes that defendants have engaged in conduct which constitutes the unauthorized practice of law. Indeed, defendants' entire enterprise was based upon the unauthorized practice of law. Defendants' customers had no knowledge of bankruptcy law or procedure and relied exclusively upon defendants' advice as well as the documents defendants' prepared. The following are specific examples of how defendants engaged in the unauthorized practice of law:

a) Defendants explained the differences between Chapters 7 and 13. *See In re Kaitangian,* 218 B.R. 102, 110 (Bankr. S.D.Cal.1998)(a preparer's "advice and explanations regarding the differences between Chapter 7 and Chapter 13 of the Code constitutes the unauthorized practice of law.").

b) Defendants gave definitions of legal terms. *See In re Kaitangian,* 218 B.R. at 111; *In re Herren,* 138 B.R. 989, 995 (Bankr.D.Wyo.1992).

c) Defendants solicited financial information from their customers to prepare their schedules. *See In re McCarthy,* 149 B.R. 162, 166 (Bankr.S.D.Cal.1992); *In re Herren,* 138 B.R. at 994 ("The solicitation of financial information and preparation of schedules is rendering legal advice, whether provided by lay persons or lawyers.").

d) Defendants prepared motions for their customers. *See In re Gavin,* 181

B.R. at 821; *In re Webster,* 120 B.R. 111, 113–14 (Bankr.E.D.Wis.1990).

e) Defendants prepared Chapter 13 plans. *See In re Hobbs,* 213 B.R. 207, 218 (Bankr.D.Me.1997).

f) Defendants advised their customers about the effects of a bankruptcy filing. *See In re Calzadilla,* 151 B.R. 622, 625 (Bankr.S.D.Fla.1993).

g) Defendants advised their customers as to which exemptions to claim and provided legal citations for the listed exemptions. *See In re Herren,* 138 B.R. at 995; *In re Webster,* 120 B.R. at 116.

In sum, this Court finds that, by a preponderance of the evidence, defendants engaged in the unauthorized price of law.[13] The Court holds that as a result of defendants' unauthorized practice of law, disgorgement of all of the fees defendants collected is warranted. *See In re Kaitangian,* 218 B.R. at 115 (since the preparer "engaged in the unauthorized practice of law, all fees received shall be disgorged as fruits of illegal and improper actions, irrespective of the quantum meruit value of such services."); *In re Gavin,* 181 B.R. at 821 (same).

The Court will below address the specific amount defendants Heussen, Serino, Zmijewski and Chaparro will be required to disgorge.[14]

*Defendant Heussen*

The record before the Court reflects that defendant Heussen prepared at least 137 bankruptcy petitions. T–20 (listing 122 customers); T–15 (additional 11 customers—Robin Branch, Izelle Brown, Michael Cohen, Carla Davis, Cynthia Humphrey, Faith Jackson, Veronda McKenzie, Maria Moore, Jacqueline Pierrelouis, Colleen Skakel and Coraleen Williams); Exhibit T–8 at 276 (customer Yvonne Brown), 2054–58 (customer Sandra Griffin), 2219–23 (customer Stan Mims), 2304–08 (customer Dasie Thornton). As a result, and with the notable absence of any evidence to the contrary, the Court concludes that defendant Heussen received at least $41,100 in fees from customers for whom he prepared bankruptcy petitions. Accordingly, defendant Heussen is required to disgorge $41,100.

*Defendant Serino*

The record before the Court reflects that defendant Serino prepared at least 76 bankruptcy petitions. T–18 (listing 70 customers); T–16 (additional 6 customers— Mafeesah Battle, Cynthia DeSantis, Joao Gigante, Robert & Sherria Langston, Gregory & Debra Lilly, Catherine McDonald). As a result, and with the notable absence of any evidence to the contrary, the Court concludes that defendant Serino received at least $22,800 in fees from customers for whom she prepared bankruptcy petitions. Accordingly, defendant Serino is required to disgorge $22,800.

*Defendant Zmijewski*

The record before the Court reflects that defendant Zmijewski prepared at least 175 bankruptcy petitions. Exhibit T–19 (listing 167 customers); T–8 at 10–15 (customer Salmisha Anderson), 293–97 (customer Betty Burke), 1885–90 (customer Sherry Wallace), 2543–50 (customer Patricia Moran), 2594–99 (customer Rudolph Perrine), 2660–63 (customer Harvey Sullivan), 2669–76 (customer Evelyn Underwood), 2782–89 (customer Christopher Hankins). As a result, and with the notable absence of any evidence to the contrary, the Court concludes that defendant Zmijewski received at least $52,500 in fees from customers for whom she prepared bankruptcy petitions. Accordingly, defendant Zmijewski is required to disgorge $52,500.

---

**13.** This matter shall be referred to the State of New Jersey for appropriate action.

**14.** Not reflected below in the numbers of petitions prepared by each of the defendants are petitions wherein they were already required by the Court to disgorge fees.

*Defendant Chaparro*

The record before the Court reflects that defendant Chaparro prepared at least 103 bankruptcy petitions. T–21 (listing 84 customers); T–8 at 804–36 (customer Timothy Hopkins), 837–72 (customer Erika Horling), 1164–99 (customer Gail Mitchell), 1785–1818 (customer Mary Toney), 2039–43 (customer Camille Bradshaw), 2074–78 (customer Andrea Carmichael), 2989–93 (customer Gamal Cheatham), 2014–18 (customer Tamara Coleman), 2079–83 (customer Timothy Hopkins), 2084–88 (customer Rhea Howard), 2089–93 (customer Ifeanyi Ike), 2094–98 (customer Esther Jackson), 2174–78 (customer Darnell Lee), 2209–13 (customer Michelle Meacham), 2216–18 (customer Barbara Mills), 2224–28 (customer Stella Mingo), 2274–78 (customer Ivannska Roig), 2299–2303 (customer Barbara Sykes), 2349–53 (customer Margaret Weil). As a result, and with the notable absence of any evidence to the contrary, the Court concludes that defendant Chaparro received at least $30,900 in fees from customers for whom he prepared bankruptcy petitions. Accordingly, defendant Chaparro is required to disgorge $30,900.

### FINES UNDER SECTION 110

■ Defendants Heussen, Serino, Zmijewski and Chaparro prepared various documents for filing on which they failed to sign and/or print their names and addresses, in violation of 11 U.S.C. § 110(b)(1), without any reasonable cause; and prepared various documents for filing on which they failed to supply their social security numbers, in violation of 11 U.S.C. § 110(c) and without any reasonable cause.[15] The Court may assess penalties up to $500 for each violation of 11 U.S.C. § 110(b)(1) and (c). *See* 11 U.S.C. §§ 110(b)(2), (c)(3).

The Court determines that in light of the circumstances of this case, the maximum fine of $500 for each violation of 11 U.S.C. §§ 110(b)(1) and (c) is warranted. *See generally In re Hartman*, 208 B.R. 768, 779 (Bankr.D.Mass.1997); *In re Jackson*, 205 B.R. 344, 345 (Bankr.S.D.Fla. 1997); *In re Paskel*, 201 B.R. 511, 516 (Bankr.E.D.Ark.1996); *In re Schweitzer*, 196 B.R. 620, 625 (Bankr.M.D.Fla.1996); *In re Murray*, 194 B.R. 651, 658 (Bankr. D.Ariz.1996); *In re Chamberland*, 190 B.R. 972, 977 (Bankr.M.D.Fla.1996)(all assessing the maximum fine in circumstances similar to or less egregious than those present here). Defendants demonstrated a disturbing lack of concern towards the requirements of sections 110(b)(1) and (c) and showed no remorse for their repeated and continuous violations. Their conduct frequently resulted in the concealment of their respective roles as the preparers of documents for filing. Further, defendants violated sections 110(b)(1) and (c) by preparing documents for filing wherein they induced their customers to certify falsely that no money was paid for services in connection with their bankruptcy filings. The Court can not discern any reason for leniency in this case. The Court below will address the specific amount of fines defendants Heussen, Serino, Zmijewski and Chaparro will be assessed.

*Defendant Heussen*

Defendant Heussen prepared at least 37 documents for filing and failed to sign and/or print his name and address on such documents in violation of 11 U.S.C. § 110(b)(1) without any reasonable cause. *See, e.g.,* T–8 at 71, 83, 128, 168, 254, 407, 884, 897, 899, 904, 983, 1036, 1037, 1038, 1129, 1132, 1247, 1248, 1371, 1639, 1736, 1873, 1915, 1953, 2456, 2462, 2523, 2577, 2601, 2602, 2613, 2623, 2641, 2646, 2703, 2708, 2718.

Defendant Heussen also prepared at least 30 documents for filing and failed to supply on such documents his social securi-

**15.** The record is devoid of any evidence which would warrant a finding that defendants' failures to comply with subsections 110(b)(1) or (c) were due to reasonable causes. Hence, the Court finds no reasonable cause for defendants' violations of subsections 110(b)(1) or (c).

ty number, in violation of 11 U.S.C. § 110(c) and without any reasonable cause. *See, e.g.,* T–8 at 71, 83, 126, 128, 168, 254, 407, 884, 899, 904, 983, 1037, 1038, 1132, 1247, 1248, 1371, 1639, 1736, 1915, 1953, 2456, 2462, 2523, 2577, 2602, 2613, 2623, 2641, 2646. Indeed, defendant Heussen utilized a social security number which was not his own on a document for filing on at least one occasion. *See, e.g.,* T–8 at 126.

Finally, defendant Heussen blatantly violated 11 U.S.C. § 110(f)(1), which provides that a bankruptcy petition preparer "shall not use the word 'legal' or any similar term in any advertisements...." *See In re Hobbs,* 213 B.R. 207, 215 (Bankr.D.Me.1997)("Petition preparer advertising must keep well clear of any suggestion that the preparer will be offering legal services or insights."). One flier distributed by defendant Heussen set forth in large letters: "WE CAN PROVIDE YOU WITH LEGAL OPTIONS YOU MAY NOT BE AWARE OF." *See* T–1. Although the Court has no doubt that many innocent people received this advertisement and a penalty for each flier distributed might be warranted, the Court will only assess defendant Heussen a $500 fine pursuant to 11 U.S.C. § 110(f)(2). *See* Tr. at 90 (Heussen's customer testifies she received and responded to T–1).

In sum, defendant Heussen is assessed a fine of $18,500 for his violations of 11 U.S.C. § 110(b)(1), a fine of $15,000 for his violations of 11 U.S.C. § 110(c) and a fine of $500 for his violation of 11 U.S.C. § 110(f)(1).

*Defendant Serino*

Defendant Serino prepared at least 27 documents for filing and failed to sign and/or print her name and address on such documents in violation of 11 U.S.C. § 110(b)(1) and without any reasonable cause. *See, e.g.,* T–8 at 63, 77, 629, 876, 1052, 1054, 1095, 1214, 1359, 1582, 1829, 1894, 2394, 2434, 2435, 2436, 2485, 2510, 2516, 2553, 2557, 2687, 2689, 2690, 2722, 2728, 2778.

Defendant Serino also prepared at least 24 documents for filing and failed to supply on such documents her social security number, in violation of 11 U.S.C. § 110(c) and without any reasonable cause. *See, e.g.,* T–8 at 63, 77, 629, 876, 1054, 1095, 1214, 1359, 1582, 1829, 1894, 2394, 2434, 2485, 2510, 2516, 2553, 2557, 2687, 2689, 2690, 2722, 2728, 2778.

In sum, defendant Serino is assessed a fine of $13,500 for her violations of 11 U.S.C. § 110(b)(1) and a fine of $12,000 for her violations of 11 U.S.C. § 110(c).

*Defendant Zmijewski*

Defendant Zmijewski prepared at least 15 documents for filing and failed to sign and/or print her name and address on such documents in violation of 11 U.S.C. § 110(b)(1) and without any reasonable cause. *See, e.g.,* Exhibit T–8 at 294, 296, 2376, 2426, 2429, 2467, 2469, 2481, 2493, 2570, 2599, 2634, 2636, 2637, 2661.

Defendant Zmijewski also prepared at least 9 documents for filing and failed to supply on such documents her social security number, in violation of 11 U.S.C. § 110(c) and without any reasonable cause. *See, e.g.,* T–8 at 2376, 2426, 2429, 2481, 2493, 2570, 2634, 2636, 2637.

In sum, defendant Zmijewski is assessed a fine of $7,500 for her violations of 11 U.S.C. § 110(b)(1) and a fine of $4,500 for her violations of 11 U.S.C. § 110(c).

*Defendant Chaparro*

Defendant Chaparro prepared at least 26 documents for filing and failed to sign and/or print his name and address on such documents in violation of 11 U.S.C. § 110(b)(1) and without any reasonable cause. *See, e.g.,* T–8 at 110, 112, 113, 176, 309, 348, 401, 494, 496, 497, 598, 599, 625, 689, 807, 808, 840, 1167, 1451, 1452, 1483, 1742, 1750, 1788, 1789, 1816.

Defendant Chaparro also prepared at least 24 documents for filing and failed to supply on such documents his social security number, in violation of 11 U.S.C. § 110(c) and without any reasonable cause. *See, e.g.,* T–8 at 110, 112, 113, 176, 309, 348,

**334**

401, 494, 496, 497, 598, 599, 625, 689, 807, 808, 840, 1167, 1483, 1742, 1750, 1788, 1789, 1816.

In sum, defendant Chaparro is assessed a fine of $13,000 for his violations of 11 U.S.C. § 110(b)(1) and a fine of $12,000 for his violations of 11 U.S.C. § 110(c).

Any Finding of Fact which could be deemed a Conclusion of Law is incorporated herein by reference.

A judgment consistent with this Opinion will be entered.